THE INDIANA LIFE ENDOWMENT COMPANY *v.* REED.

[No. 8,037. Filed November 6, 1913.]

1. PLEADING. — *Complaint.* — *Exhibits.* — *Sufficiency of Paragraph Referring to Exhibit in Paragraph Dismissed.*—Where an insurance policy was filed as an exhibit to a first paragraph of complaint, the dismissal of such paragraph does not operate to take the papers out of the case in the absence of leave granted for their withdrawal, so that a subsequent paragraph, stating that

the policy filed with the first paragraph is referred to and made a part of such subsequent paragraph, is not insufficient on the ground that such policy is not an exhibit thereto. p. 457.

2. CONTRACTS.—*Renunciation.—Remedy.*—The renunciation of an executory contract, either before or after the time of performance has arrived, gives a right of action to the injured party for the damages sustained by reason thereof, in which he may recover, once for all, all that may ultimately be due him. p. 458.

3. INSURANCE.—*Renunciation of Contract.—Right of Action.*—The doctrine of the right to sue for damages for the renunciation of an executory contract, is applicable in the case of an insurance company's refusal to carry out its contract of insurance with a policy holder. p. 459.

4. INSURANCE.—*Life Insurance.—Breach of Contract.—Denial of Liability.—Complaint.*—Where a life policy contained a provision .for the payment of benefits in case of permanent total disability, a complaint against the company for breach of the contract on the company's refusal to pay benefits claimed by plaintiff for the loss of his left arm, setting out the company's letter stating that the disability of plaintiff was not embraced within the terms of the policy, that the company "cannot make payment, in fact we would have no right to do so, unless the insured is totally and permanently disabled for life from doing anything whereby he may earn a livelihood", and that if developments should unfold whereby plaintiff would be rendered unable from ever earning money again, "all we want is the proof thereof", and alleging that defendant thereby renounced and repudiated the contract and disclaimed any and all liability by reason of said accident, whereby the maximum amount of said policy is due and payable, is insufficient, since the letter, fairly construed, does not amount to a total repudiation of the contract or a denial of all liability by the company. pp. 459, 460.

5. CONTRACTS.—*Breach by Renunciation.*—To constitute a breach of contract by renunciation, or denial of liability, such renunciation must be distinct and unequivocal and cover all obligations or performances thereunder to which the contract binds the defaulting party. p. 460.

6. PLEADING. — *Theory. — Conflicting Theories.* — A pleading must proceed upon some definite theory which must be determined by its general scope and character, and if it is insufficient on the theory on which it proceeds, it cannot be held good on some other and entirely inconsistent theory, even though it may contain averments tending to show a cause of action on such other theory. p. 461.

7. INSURANCE.—*Action.—Complaint.—Theory.*—Where a complaint against an insurance company proceeded on the theory that de-

fendant had renounced and repudiated the contract by refusing to pay plaintiff certain monthly disability benefits claimed, it cannot be held good as an action for the stipulated benefits, even though such an action may be sufficiently alleged therein, since such an action is inconsistent with the theory on which the complaint was based. p. 461.

8. INSURANCE. — *Action.* — *Allegations of Complaint.* — *Denial of Liability.*—A complaint for damages for the renunciation of an insurance contract, showing the issuance of the policy to plaintiff, performance on his part, his injury, notice to defendant, and averring that defendant wholly refused and declined to make payment, and wholly renounced and repudiated the policy, is sufficient. p. 462.

9. INSURANCE.—*Renunciation of Contract.*—*Allegations of Complaint.*—*Damages.*—The averment in a complaint for damages for the renunciation of an insurance contract, that defendant "wholly renounced and repudiated their said contract and policy", considered with the other averments, is sufficient to show a damage to plaintiff in some amount by reason of such renunciation. p. 462.

10. INSURANCE.—*Contract.*—*Construction.*—An insurance contract will be strictly construed against the company, and that construction will be adopted which will sustain, rather than defeat, the purpose of the contract, if, considering the situation of the parties, it can be done without doing violence to the language employed. p. 465.

11. INSURANCE.—*Contract.*—*Construction.*—An insurance contract should be reasonably construed so as to effectuate the purpose for which it was made, and in so doing the court should consider the relation and situation of the parties at the time, and ascertain the meaning upon which their minds may reasonably be said to have met. p. 466.

12. INSURANCE.—*Life Insurance.*—*Disability Provision.*—*Construction.*—Where a life policy, containing a provision for the payment of monthly benefits to insured in case he should become totally and permanently disabled from doing, performing, managing or directing any service of any kind or character by which he might earn a livelihood, was issued to an illiterate person who earned his living by manual labor as a farmer and coal miner, the provision must be construed to mean that insured is entitled to pay in case of his total and permanent disability from following any occupation or engaging in any business from which he may by reasonable effort obtain a livelihood, and, if in view of insured's condition at the time the policy was issued, he has become totally and permanently incapacitated from earning a livelihood, liability cannot be denied by the company be-

cause of a mere possibility that by education or otherwise, insured may at some time become able to earn a living in some way. pp. 466, 467.

13. INSURANCE.—*Action for Disability Benefits.—Question of Fact.*—In an action on an insurance policy for the recovery of disability benefits, the question of whether plaintiff, who had lost an arm, was permanently and totally disabled so as to be incapable of earning a livelihood within the meaning of the policy, was one of fact to be determined by the court or jury trying the cause. p. 467.

14. INSURANCE.—*Life Insurance.—Disability Provision.—Interest of Beneficiary.—Action.—Amount of Recovery.*—Under a policy containing no provision for change of beneficiary, and containing a provision that in case of total disability of insured entitling him to payment therefor, liability to the beneficiary at the death of the insured shall cease and terminate, unless the payments of dues and assessments were continued during such disability, the beneficiary had a vested interest that could not be divested by the company's renunciation of the disability provision, or by any suit thereon to which she was not a party, so that in an action by the insured for damages for breach by renunciation and refusal to pay disability claims, to which the beneficiary was not a party, a recovery in an amount equal to the full value of the policy was erroneous as being too large. p. 470.

15. APPEAL. — *Review. — Evidence. — Sufficiency.* — A decision for plaintiff in an action against an insurance company for damages for renunciation of its contract is not sustained by sufficient evidence where the evidence of renunciation consisted merely of a letter recognizing the contract, but denying liability for the particular claim as not being within the meaning of the policy. p. 471.

16. APPEAL.—*Waiver of Error.*—Errors assigned, but in no way discussed by appellant, are waived. p. 472.

From Gibson Circuit Court; *Herdis F. Clements,* Judge.

Action by Levi L. Reed against The Indiana Life Endowment Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*William D. Hardy* and *Robinson & Stilwell,* for appellant. *Ely & Ely* and *Vandeveer & Vandeveer,* for appellee.

FELT, J.—This is a suit to recover on an insurance policy and also to recover damages for the repudiation of the insurance contract. The complaint was in three paragraphs

but the first paragraph was dismissed. Trial by the court resulted in a finding and judgment for plaintiff for $5,000, the face of the policy, and interest from November 27, 1908.

The errors assigned are: The overruling of appellant's demurrer to the second and also the third paragraph of the complaint; the sustaining of appellee's demurrer to the second paragraph of answer to the second paragraph of complaint; also the same ruling on a similar answer to the third paragraph of complaint, and the overruling of appellant's motion for a new trial.

The third paragraph of complaint, omitting formal parts, is as follows: "That on the 22nd day of June, 1908, the said defendant, in consideration of the sum of five dollars, to be paid to the defendant herein, on or before the first day of each calendar month thereafter as a premium, executed and delivered to the plaintiff herein a policy of life, disability and accident insurance number 1548. That said policy provided among other things that 'if the said Levi L. Reed the insured herein shall become totally and permanently disabled from performing any and all kinds of manual labor or business upon which he may depend for a livelihood, upon receipt of satisfactory proof of such total and permanent disability this company will pay the monthly benefits hereinafter stipulated to the said Levi L. Reed, so long as he shall live, not, however, to exceed the maximum amount stated in this policy.' That the monthly benefits stipulated in said policy was and is the sum of seventy dollars a month. That the maximum amount stipulated and named in said policy is the sum of five thousand dollars. That thereafter, to wit, on the nineteenth day of November, 1908, the plaintiff herein was accidentally shot in the left hand by the accidental discharge of a shot gun then and there held by him, so tearing, mangling and wounding his said left hand that the same was necessarily amputated at the wrist. That at the time of the execution of said policy the plaintiff was forty-eight years of age; that his occupation is now, and at that time was and

always has been that of a manual laborer on a farm and a manual laborer in mining coal, and that he had never followed nor was he qualified to follow any other occupation for a living at the time of the execution of said policy nor for many years before and that he depended upon said occupations and upon them alone for a livelihood for himself and his family. * * * That at the time of said injury and the execution of said policy and for many years before and ever since, the plaintiff has had no property whatever and has had to make his living by manual labor on a farm in spring and summer and manual labor in mining coal in the fall and winter and that he depended upon said manual labor for the support of himself and family as aforesaid. That the plaintiff is an illiterate man, never having graduated even in the common schools of his day; that ever since the infliction of said injury the plaintiff has been in extremely bad health, to wit: nervous and weak and is constantly growing more nervous and weaker, all of which has been caused by said injury. That as a result of said injury the plaintiff has been and is totally and permanently disabled from performing any and all kinds of manual labor upon which he depended for a living for himself and family as aforesaid. That he is wholly incapacitated and disabled for the business of farming and mining coal or either of them for all time to come by reason of the injury aforesaid. That on or about the 24th day of November, 1908, the plaintiff notified the defendant in writing of said accident to himself and requested the defendant to pay him his monthly benefits stipulated and provided for in said policy of insurance. That said written notice was received by the defendant and after receiving the same, to wit, on or about the 27th of November, 1908, the said defendant wholly refused and declined to make any payment whatever on said policy to said plaintiff, and wholly renounced and repudiated its said contract and policy and has never paid anything whatever thereon. That by reason of the defendant's said renunciation and

repudiation of its said contract and policy the plaintiff was and is damaged in the sum of five thousand dollars. That plaintiff is forty-eight years of age and has a life expectancy of twenty to twenty-seven years. Plaintiff further avers that before the beginning of this suit he fully performed all of the conditions of said contract and policy upon his part to be performed.''

The second paragraph of complaint contains substantially the same averments as the third, and in addition thereto, seeks to make the policy a part of the pleading by the following averment: ''A copy of which is filed with the first paragraph of this complaint marked 'Exhibit A' and is referred to and made a part of this paragraph of complaint.'' It is also averred: ''That on the 27th day of November, 1908, the defendant herein, in writing, answered the written notice and demand of plaintiff as follows:

'Evansville, Ind. Nov. 27, 1908.   Mr. Levi L. Reed: Dear Sir:   Your letter of the 25th inst. received and noted.   We are indeed sorry to hear of the accident which deprived you of your left arm, but we do not think that our policy covers an accident of that character.   Of course it is true that you are not in condition to hereafter follow the same kind of business which you have heretofore done, but the loss of the left arm does not totally and permanently disable a man from performing or directing any and all kinds of manual labor or business upon which he may depend for a livelihood. A man with a good right arm frequently holds a good position and makes as much money as he did when he had both arms.   We are always prompt in meeting our contracts if they come within its scope, but we cannot make payment—in fact we have no right to do so—unless the insured is totally and permanently disabled for life from doing anything whereby he may earn a livelihood.   We shall be pleased to hear from you at any time, and in case that developments might unfold which would really prevent your ever being able to earn money again, all we want is the proof thereof.   We are, as we said before, exceedingly sorry when our policy holders meet with troubles, and for your sake we wish that the policy covered accidents of that character, but we do not be-

lieve that it does in any way cover this.   With kindest regards we remain, The Indiana Life Endowment Company, per C. A. Hostetter, Secy.';

thereby renouncing and repudiating said contract and policy of insurance so executed and delivered by the defendant to plaintiff, and thereby renouncing, repudiating and disclaiming any and all liability by reason of said accident to plaintiff as hereinbefore mentioned, whereby plaintiff says the maximum amount of said policy, to wit: $5,000, became and is now due and payable.''

It is contended that the second paragraph seeks to recover on the policy and is insufficient because the policy is not by exhibit or otherwise made a part of the pleading, it

1.   being claimed that the dismissal of the first paragraph took the exhibit out of the case for all purposes.   It has been held in numerous decisions that where several paragraphs of a complaint, or several paragraphs of answer, refer to the same written instrument as the foundation of such pleadings, one copy of the instrument, duly made a part of one paragraph, is sufficient, and it may be incorporated into other pleadings by proper reference.   It is claimed, however, that these decisions do not answer the objection where the paragraph, of which the instrument is a part, has been dismissed.   In *Sidener* v. *Davis* (1879), 69 Ind. 336, the court decided that a reference in a counterclaim, by the words ''a copy of which is filed with the complaint'' was sufficient to make the instrument referred to a part of the counterclaim, and in discussing the question said on page 341:  ''If it should be said that, in case the plaintiff dismissed his complaint, and the defendant still desired to prosecute his counterclaim, then the counterclaim would be without its proper exhibit, to this it might be answered, that the plaintiff, if he should dismiss his complaint, cannot withdraw the papers from the files without leave of the court, and the exhibit would still remain for the benefit of the counterclaim.   It does not appear to us that any inconvenience could occur in

practice on this account, as the whole matter would at all times be under the proper care and supervision of the court.'' In *Anderson* v. *Wilson* (1884), 100 Ind. 402, 407, the Supreme Court declares that notwithstanding an original pleading has been dismissed, the papers remain on file and may be referred to in support of other, or subsequent pleadings. While the exact question here presented was not before the court in the cases last cited, we think the reasoning is sound, and hold that the dismissal of the first paragraph of the complaint, in the absence of an order of the court permitting the withdrawal of the papers, did not take the exhibit out of the case for the purpose of making it a part of the second paragraph of the complaint, as an exhibit, by reference thereto. The numerous cases referred to as holding that an amended pleading takes the original pleading and all rulings thereon out of the record, are not in conflict with our conclusion as above announced.

While the policy is made a part of the second paragraph of complaint, when all the averments are considered, including the demand for $5,000, it is apparent that the theory of the paragraph is, that appellant repudiated the contract by denying all liability to appellee. In discussing this paragraph, appellee says: ''The theory of the plaintiff is that upon repudiation by defendant, plaintiff is entitled to sue immediately for damages caused by the repudiation.''

2. With few exceptions, the courts of England and America have held that the renunciation of an executory contract, either before or after the time of performance has arrived, or the refusal to carry out the provisions of a contract in course of performance, gives a right of action to the injured party for the damages sustained by reason of such breach, or repudiation of the contract. A denial of all liability, where liability has attached, is held to give the injured party the right to treat the contract as broken or repudiated and to pursue his remedy for damages for the breach, and to recover, once for all in a single suit all that

may ultimately be due him.   *Hochster* v. *De La Tour* (1853), 75 Eng. Com. Law (2 E. & B.) 678; *Johnstone* v. *Milling* (1886), 16 Law Rep. (Q. B. D.) 460, 466; *Roehm* v. *Horst* (1899), 178 U. S. 1, 19, 20 Sup. Ct. 780, 44 L. Ed. 953; *Anvil Mining Co.* v. *Humble* (1893), 153 U. S. 540, 552, 14 Sup. Ct. 876, 38 L. Ed. 814; *Pierce* v. *Tennessee Coal, etc., Co.* (1898), 173 U. S. 1, 16, 19 Sup. Ct. 335, 43 L. Ed. 591; *Hamilton* v. *Love* (1899), 152 Ind. 641, 645, 53 N. E. 181, 54 N. E. 437, 71 Am. St. 384; *Adams* v. *Byerly* (1889), 123 Ind. 368, 24 N. E. 130; *Inland Steel Co.* v. *Harris* (1911), 49 Ind. App. 157, 163, 95 N. E. 271; *Phillips* v. *United States Ben. Society* (1899), 120 Mich. 142, 79 N. W. 1; *Hartford Fire Ins. Co.* v. *Smith* (1877), 3 Colo. 422, 426; 1 Beach, Contracts §409 *et seq;* 1 Bishop, Contracts (2d ed.) §1428; 9 Cyc. 635.

The doctrine of the right to sue for damages for the renunciation of an executory contract has been invoked against an insurance company for alleged refusal to carry out

3.   a contract of insurance with a policy holder.   In the case of *O'Neill* v. *Supreme Council, etc.* (1904), 70 N. J. L. 410, 416, 57 Atl. 463, 1 Ann. Cas. 432, 434, the Supreme Court of New Jersey, after an exhaustive review of the decisions said:  "Upon the whole we are satisfied that the doctrine of *Hochster* v. *De La Tour* is well founded in principle as well as supported by authority.   We are also clear that it applies to such a contract as the one in suit; and that the declaration sets forth a renunciation so clear and unequivocal as to give ground for an action, it being averred that the defendant has declared to the plaintiff that it will not perform the contract and has refused to accept the monthly assessments tendered by the plaintiff in performance of conditions precedent on his part."

The second paragraph of complaint sets out the letter received from appellant in reply to appellee's request

4.   for payment and follows it by the words "thereby renouncing and repudiating said contract and pol-

icy of insurance  *  *  *  and thereby renouncing, repudiating and disclaiming any and all liability by reason of said accident to plaintiff  *  *  *  whereby plaintiff says the maximum amount of said policy  *  *  *  is now due and payable.'' Whether this paragraph avers facts sufficient to show a denial of all liability on the insurance contract, depends wholly on the meaning of the letter set out in the pleading, for the only averments on the subject of a denial of liability or renunciation of the contract refer to and are made dependent upon the letter received from appellant. To constitute a breach of contract by renunciation, or denial of liability, such renunciation must be distinct and unequivocal and cover all obligations or performances thereunder to which the contract binds the defaulting party. 3 Page, Contracts §1439; 1 Beach, Contracts §413; 9 Cyc. 636; 2 Benjamin, Sales (Rev. ed.) §860; *Johnstone* v. *Milling, supra.* In *Daley* v. *People's Bldg., etc., Assn.* (1901), 178 Mass. 13, 59 N. E. 452, the Supreme Court of Massachusetts on page 18 said: ''A mere refusal to pay money when due, especially a refusal based upon the terms of the contract and in good faith although mistakenly believed to be justified by it, is not a repudiation of the contract and does not warrant a rescission. The only remedy is a suit upon the contract.'' The language of the letter when fairly construed does not amount to a denial of all liability on the part of appellant, or to a repudiation of the contract of insurance. The letter in substance denies that the policy makes the company liable for an accident resulting in the loss of a hand and states that the policy does not create a liability, and the company has no right to pay, except in cases of total and permanent disability. It also clearly indicates that if further developments bring appellee within the terms of the policy, all that the company will require before payment, is proof of such facts. From this it follows that the second paragraph of

complaint is insufficient on the theory of a breach, or renunciation of the insurance contract.

Can the paragraph be held good on any other theory? A pleading must proceed upon some definite theory which must be determined by its general scope and character. This rule is not in conflict with decisions holding complaints good which contain averments not essential to a recovery, or which aver numerous facts not inconsistent with the general theory of the pleading, proof of a part of which may authorize a recovery. But where a pleading is drawn on some definite theory and is insufficient on that theory, it cannot be held good on some other and entirely inconsistent theory, though it may contain some averments tending to show a cause of action on such other theory. *Dyer* v. *Woods* (1905), 166 Ind. 44, 51, 76 N. E. 624; *State, ex rel.* v. *Scott* (1908), 171 Ind. 349, 353, 86 N. E. 409; *Lake Shore, etc., R. Co.* v. *Myers* (1912), 52 Ind. App. 59, 98 N. E. 654, 100 N. E. 313.

The second paragraph is not drawn on the theory of a recovery according to the provisions of the policy, but on the theory of damages for the renunciation of the contract of insurance and a denial of all liability. While there are some averments tending to show a liability for the monthly benefit due in case of total disability, such a recovery depends on the contract and can only be obtained by an endorsement of its obligations, while the paragraph, as already shown, proceeds on the theory of damages for a breach of the contract, and treats the policy as annulled, or ended for all purposes except such as it may serve in the suit for damages. In *Johnstone* v. *Milling, supra,* Lord Esher on page 467 said: "The other party may adopt such renunciation of the contract by so acting upon it as in effect to declare that he too treats the contract as at an end, except for the purpose of bringing an action upon it for the damages sustained by him in consequence of such renunciation.

He cannot, however, himself proceed with the contract on the footing that it still exists for other purposes, and also treat such renunciation as an immediate breach. If he adopts the renunciation, the contract is at an end except for the purposes of the action for such wrongful renunciation; if he does not wish to do so, he must wait for the arrival of the time when in the ordinary course a cause of action on the contract would arise. He must elect which course he will pursue.'' Since we have held the second paragraph insufficient on the theory of a suit for damages, it can not be held good as showing a liability for the stipulated amount due monthly for total and permanent disability, for, granting, but not deciding, that the averments are otherwise sufficient to authorize such recovery, the theory would be utterly inconsistent with that of a suit for damages for the breach of the contract. A suit to recover for total disability counts upon the contract and the suit for damages treats it as broken and ended except for the one purpose of sustaining the claim for damages for its breach.

The third paragraph of the complaint is likewise for damages for the renunciation, or breach of the insurance contract. The policy is not made a part of this paragraph, but the averments show its issuance to appellee, performance on his part, his injury, notice to appellant, and then avers that ''said defendant wholly refused and declined to make any payment whatever on said policy to said plaintiff, and wholly renounced and repudiated their said contract and policy and has never paid anything whatever thereon.'' The letter from appellant is not set out in this paragraph, nor are the averments of the refusal of payment and renunciation of the contract made dependent upon it, so that as a matter of pleading the averments are sufficient to show a refusal to pay anything on the policy and a renunciation of the insurance contract. The averment that appellant ''wholly renounced and repudiated their said contract and policy'', considered

with the other averments, is sufficient as a matter of pleading, to show a damage to appellee in some amount by reason of such renunciation and repudiation of the insurance contract. *O'Neill* v. *Supreme Council, etc., supra; Kurtz* v. *Frank* (1881), 76 Ind. 594, 40 Am. Rep. 273, 9 Cyc. 9, 635. In *Roehm* v. *Horst, supra,* the Supreme Court of the United States by Chief Justice Fuller, after reviewing the decisions on the subject of an anticipatory breach of an executory contract, and cases dealing with renunciation, or breach after the time fixed for the performance of a contract on page 19 said: "We think that there can be no controlling distinction on this point between the two classes of cases, and that it is proper to consider the reasonableness of the conclusion that the absolute renunciation of particular contracts constitutes such a breach as to justify immediate action and recovery therefor. The parties to a contract which is wholly executory have a right to the maintenance of the contractual relations up to the time for performance, as well as to a performance of the contract when due. If it appear that the party who makes an absolute refusal intends thereby to put an end to the contract so far as performance is concerned, and that the other party must accept this position, why should there not be speedy action and settlement in regard to the rights of the parties? Why should a *locus penitentiae* be awarded to the party whose wrongful action has placed the other at such disadvantage? What reasonable distinction *per se* is there between liability for a refusal to perform future acts to be done under a contract in course of performance and liability for a refusal to perform the whole contract made before the time for commencement of performance?" The third paragraph therefore states a cause of action for damages in some amount for the breach, or renunciation, of the insurance contract.

A new trial was asked on the ground, (1) that the decision of the court is not sustained by sufficient evidence; (2) that the decision is contrary to law; (3) that the assess-

ment of the amount of recovery is erroneous, being too large; (4) error in the admission of certain evidence.

The policy, the notice to the company of appellee's claim, and appellant's written reply, were put in evidence. The policy is in part as follows:

"In Consideration of the application of Levi L. Reed, of Winslow, in the State of Indiana, for this policy, which application is hereby made a part of this contract, * * * and the payment of Five Dollars per month on or before the first day of each calendar month hereafter, in advance; and also in consideration of a full compliance with all the terms, conditions and provisions endorsed upon the back of this policy, each of which said terms, conditions and provisions is hereby made a part of this policy, the Indiana Life Endowment Company will pay to the beneficiary herein named, immediately upon receipt of the satisfactory proof of the death of the said Levi L. Reed, herein called the insured, One Hundred Dollars for funeral and other emergency expenses and thereafter will pay to Martha F. Reed (wife) herein called the beneficiary, the sum of Seventy Dollars monthly, on the first day of each calendar month during her natural life, or until marriage or remarried, not to exceed however, the total sum of Five Thousand Dollars. Or if the said Levi L. Reed the insured herein, shall become totally and permanently disabled from performing any and all kinds of manual labor, or business upon which he may depend for a livelihood, upon the receipt of satisfactory proof of such total and permanent disability, this company will pay the monthly benefits herein stipulated to the said Levi L. Reed so long as he shall live, not however to exceed the maximum amount stated in this policy."

Among the provisions referred to on the face of the policy and printed on the back thereof are the following:

"Sixth.—If the holder of this policy shall become totally and permanently disabled, and shall thereby receive the benefits as provided herein, at the death of such policy holder, all rights or claims under the terms of this policy, whether the insured or the beneficiaries herein named, shall cease and terminate. But if the insured shall continue to pay all premiums, dues and assessments on this policy during said disability, then the rights and

interests of the beneficiaries shall be preserved, and after the death of the insured the beneficiaries will receive the monthly benefits as provided herein, not to exceed, however, the maximum amount in this policy, including the amount drawn by the insured during disability. Seventh.—The terms 'Total and permanent disability' as used in this policy shall be understood to mean such disability as shall render the insured totally incapable of doing, performing, managing or directing any service of any kind or character by which the insured might earn a livelihood; and that such disability is of such a character as to render recovery improbable. To determine whether such disability is permanent or not, the Company reserves the right, if the proof is not conclusive, to defer payment of disability claims for three months after application and proofs are presented therefor. And in case such claim is allowed and paid and thereafter the claimant shall sufficiently recover as to be able to perform any service of any kind or character by which a livelihood can be earned, then said total and permanent disability benefits shall cease and terminate, and the amount so paid shall be charged against the maximum amount provided on the face of this policy as having been paid thereon."

What is total and permanent disability within the meaning of this policy? The phrase "manual labor, or business upon which he may depend for a livelihood", printed on the face of the policy is to some extent more liberal to the insured in the matter of employment or means of earning a livelihood than the words on the back of the policy, viz., "doing, performing, managing or directing any service of any kind or character, by which the insured might earn a livelihood."

When an insurance contract contains conflicting provisions, or is otherwise ambiguous, it will be strictly construed against the company, and that construction will be adopted which will sustain, rather than defeat the purpose of the contract, if it can be done without doing violence to the language employed, when fairly construed in the light of the situation of the parties to the contract. *Hay* v. *Meridian Life, etc., Co.* (    ), ... Ind. App. ....,

101 N. E. 651; *Glens Falls Ins. Co.* v. *Michael* (1906), 167 Ind. 659, 666, 74 N. E. 964, 79 N. E. 905, 8 L. R. A. (N. S.) 708; *Northern Assurance Co.* v. *Carpenter* (1912), 52 Ind. App. 432, 94 N. E. 7,79; *Iowa Life Ins. Co.* v. *Haughton* (1910), 46 Ind. App. 467, 477, 87 N. E. 702; *Metropolitan Life Ins. Co.* v. *Johnson* (1911), 49 Ind. App. 233, 242, 94 N. E. 785, and cases cited; *Neill* v. *Arder, etc.* (1894), 28 N. Y. Supp. 928, 78 Hun 255.   The policy under consideration is a life insurance policy with certain provisions for burial and disability benefits.   Most of the decided cases deal with accident policies which provide insurance for certain specified injuries, or for disability, rendering the insured incapable of following his usual avocation.   We find no case that is of controlling influence in deciding what is total and permanent disability within the meaning of this policy.   The general principles applicable to the construction of such instrument, and decisions in cases bearing some analogy to the one at bar must therefore be depended upon for guidance.   Such a contract is to be reasonably construed so as to effectuate the purpose for which it was made.

A fair and reasonable construction should be given to all the language employed, and in so doing we should consider the relation and situation of the parties, when the policy was issued, and ascertain the meaning upon which the minds of the contracting parties may reasonably be said to have met at that time.   *Glens Falls Ins. Co.* v. *Michael, supra,* 677.   When so construed, the policy issued to appellee means that in case the insured becomes totally and permanently disabled from following any occupation or engaging in any business from which he may by reasonable effort obtain a livelihood, he is entitled to payment as stipulated in the policy.   Such employment or business is not necessarily limited to farming and coal mining, but on the other hand, the policy must be construed in the light of the facts that must have been known to both the contracting parties when it was issued.   The company insured

Indiana Life, etc., Co. *v.* Reed—54 Ind. App. 450.

appellee knowing that he was an illiterate laborer. So, taking the man as he was when the policy was issued and the claim for benefits presented, if, from the injury and condition shown, he was totally and permanently incapacitated from earning a livelihood, the company could not rightfully refuse to pay, because of a mere possibility that by education, or otherwise, he might at some time become able to earn a living in some way, or by some means, not then available.

Appellee would not necessarily be entitled to recover, because of the loss of his hand, for the policy only gives him such right for total and permanent disability. The loss of one hand might or might not result in such disability. Whether he was or was not totally and permanently disabled within the meaning of the policy as above construed, considering all the evidence bearing on the question of disability, is a question of fact to be determined by the court or jury trying the case. *Turner* v. *Fidelity & Casualty Co.* (1897), 112 Mich. 425, 429, 70 N. W. 898, 38 L. R. A. 529, 535, 67 Am. St. 428, and notes.

In *Lobdill* v. *Laboring Men's Mut. Aid Assn.* (1897), 69 Minn. 14, 71 N. W. 696, 65 Am. St. 542, 38 L. R. A. 537, the Supreme Court of Minnesota, said: "The cases which have placed a construction upon the term 'total disability' might seem to be divided into two classes, viz., those which construe it liberally in favor of the insured, and those which construe it strictly against him * * *. Any apparent conflict in the decisions may, however, be mostly reconciled in view of differences in the language of the policies and of the different occupations under which the parties were insured. As is well said in *Wolcott* v. *United Life, etc., Co.* [1889], 55 Hun 98, [8 N. Y. Supp. 263]: 'Total disability must, from the necessity of the case, be a relative matter, and must depend largely upon the occupation and *employment* in *which* the party insured is engaged.' One who labors with his hands might be so disabled by a severe injury to one hand as not to be able to labor at all

at his usual occupation, whereas a merchant or a professional man might by the same injury be only disabled from transacting some kinds of business pertaining to his occupation. * * * All that the courts can do is to construe the contract which the parties have made for themselves; but in doing so they should give it a reasonable construction, so as, if possible, to give effect to the purpose for which it was *made.*" Cooke, Life Ins. §108 says: "Disability, as a condition on which the liability of the insurer becomes consummated, may, by the terms of the agreement, be limited to disability arising from injuries specified. And when not thus limited, it is commonly limited to '*total*' disability. Total disability must of necessity be a relative matter, depending largely upon the occupation and employment of the insured. In the absence of agreement to the contrary, it seems to be the rule, that such disability consists in a total inability to earn a livelihood at *any* employment, and to be not restricted to a particular employment, or that in which the insured is engaged at the time of the injury. But it is also reasonably held that, to constitute total disability to labor, it is not necessary that the insured be incapacitated to do *anything* in the prosecution of a given employment, but only that he be incapacitated to do all the substantial acts necessary to the prosecution of such employment."

In *Hutchinson* v. *Supreme Tent, etc.* (1893), 68 Hun 355, 22 N. Y. Supp. 801, the court considered an insurance contract which provided that upon "total and permanent disability to perform or direct any kind of labor or business" the disabled member was entitled to the specified benefit, and on page 359 said: "Here we have a definition or a description of the disability that would entitle the plaintiff to recover. It is not only permanent, but total, so as to be unable to perform or direct any kind of labor or business. It is not limited to the business in which the plaintiff was engaged at the time of his injury, but it is, in the broadest language possible to use, 'a total and permanent disability to perform

or direct any kind of labor or business.' A total disability is ordinarily one of fact, and is for the jury. It must be determined from the facts and circumstances disclosed in each case. That which would be total disability in one case might not be in another. The loss of a hand by a lawyer might interfere but slightly in the transaction of his business, or in the performance of his work, while to a man who had learned a particular trade, by which he had always earned his living, and was entirely ignorant of all other trades or business, it might prove to be much more serious disability. Ordinarily the loss of the fingers of the hand does not constitute total disability from the performance of any kind of labor or business.''

In *Baltimore, etc., R. Co.* v. *Post* (1888), 122 Pa. St. 579, 600, 15 Atl. 885, 2 L. R. A. 44, the court said: ''We also think the court below erred in its construction of the words 'total inability to labor,' contained in the constitution and by-laws. This was a relief association, not an accident insurance company. Its object was to relieve its members during the time when they were unable to work by reason of injury or sickness. Hence, if a member was injured in such a way that he could no longer earn a livelihood at the particular labor at which he was employed at the time of the accident, yet was capable of earning as much or more money in some other employment, it was certainly not the object of the association, as expressed by its charter and by-laws, that he should remain idle and draw benefits all his life.'' See, also, Bliss, Life Ins. §403; 2 May, Insurance §§522, 523; *Young* v. *Travelers Ins. Co.* (1888), 80 Me. 244, 13 Atl. 896; *Saveland* v. *Fidelity, etc., Co.* (1886), 67 Wis. 174, 30 N. W. 237, 58 Am. Rep. 863.

In *Mutual Benefit Assn.* v. *Nancarrow* (1903), 18 Colo. App. 274, 71 Pac. 423, the court had under consideration a policy which provided for benefits if the insured was ''totally disabled and confined to his house'' and said: ''The words 'totally disabled', as well as the words 'confined to the house',

must receive a reasonable interpretation.  The purpose of the policy was to indemnify the plaintiff against loss occasioned by inability to attend to his work or business on account of sickness.  The total disability contemplated by the instrument, does not mean a state of absolute helplessness.  The plaintiff might have been able to walk, he might have been able to ride on the cars to his physician's office, and still have been entirely incapacitated for work or business.  In view of the object of the contract, we think that if he was so incapacitated, he was totally disabled within the meaning of the policy.''  See, also, *James* v. *U. S. Casualty Co.* (1905), 113 Mo. App. 622, 88 S. W. 125; *Thayer* v. *Standard Life, etc., Co.* (1896), 68 N. H. 577, 41 Atl. 182; *U. S. Casualty Co.* v. *Hanson* (1905), 20 Colo. App. 393, 79 Pac. 176; *Turner* v. *Fidelity & Casualty Co., supra; Genest* v. *L'Union St. Joseph* (1886), 141 Mass. 417, 6 N. E. 380; *Saveland* v. *Fidelity, etc., Co., supra.*

The further question of the interest of the wife, the beneficiary named in the policy, remains to be considered.  The policy provides that in case of disability of the insured entitling him to payment therefor, liability to the beneficiary at the death of the insured shall cease and terminate unless the payment of dues and assessments shall be continued during such disability, in which event the rights of the beneficiary under the policy shall be preserved, and she will be entitled to payment at the death of the insured, according to the terms of the policy, deducting from the total sum stipulated in the policy the amount paid to the insured under the disability clause of the contract.  The contract makes no provision for a change of beneficiary, and she would undoubtedly have the right to continue the payment of dues and assessments during disability of the insured in order to preserve her rights under the policy.  She therefore had a vested interest in the policy that could not be divested by any refusal of the company to pay a claim for disability benefits or by any renunciation of the contract,

or by a suit to which she was not a party. *Indiana, etc., Life Ins. Co.* v. *McGinnis* (1913), 180 Ind. 9, 101 N. E. 289; *Kline* v. *National Ben. Assn.* (1887), 111 Ind. 462, 465, 11 N. E. 620, 60 Am. Rep. 703; *Farra* v. *Braman* (1908), 171 Ind. 529, 540, 86 N. E. 843. The third paragraph of complaint which we have held good does not disclose that the wife of appellee has any interest in the policy, but the policy was introduced in evidence and her interest must be considered in passing on the motion for a new trial. The denial of liability to appellee, and repudiation of the contract, as alleged, could only affect appellee and would not affect or change the situation of the beneficiary. Therefore on the facts of this case there could not be a recovery equal in amount to the full value of the policy. The amount of the recovery is therefore erroneous, being too large. A suit for damages for a breach, or the repudiation of the whole contract of insurance could not be sustained without making the beneficiary a party to the suit, or in some legal way showing that she had ceased to have any interest in the policy. The insured could, of course, maintain a suit on the policy for any accrued benefits due him, independent of the beneficiary, for the policy expressly gives him such right.

The motion for a new trial should also have been sustained for the reason that the decision of the court is not sustained by sufficient evidence. The only evidence of a denial of all liability or renunciation of the insurance contract is the letter written by appellant to appellee in answer to his claim for benefits. We have already construed this letter in passing on the sufficiency of the second paragraph of the complaint. It does not show a denial of all liability or a repudiation of the contract. It recognizes the contract, but denies liability for the particular claim then presented by appellee, claiming that his injury did not permanently and totally disable him within the meaning of his policy. There is therefore a total failure of proof to show a denial of all liability or a repudiation of the contract with-

out which there can be no recovery on the third paragraph of complaint.

We have considered all the questions presented by the briefs. Other questions suggested by the assignment of errors and the motion for a new trial have not been discussed and are therefore waived. The judgment is therefore reversed with instructions to the lower court to sustain the motion for a new trial, to permit the parties to amend their pleadings if desired, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 103 N. E. 77. See, also, under (1) 31 Cyc. 558-563; (2) 9 Cyc. 639; (4) 9 Cyc. 636; (5) 9 Cyc. 637; (6) 31 Cyc. 84, 116; (8) 25 Cyc. 916-919; (10) 25 Cyc. 739, 740; (12) 1 Cyc. 269; (13) 1 Cyc. 301; (14) 1 Cyc. 302; (16) 3 Cyc. 388. As to what constitutes total disability within meaning of accident insurance policy, see 38 L. R. A. 529; 23 L. R. A. (N. S.) 352; 29 L. R. A. (N. S.) 635; 34 L. R. A. (N. S.) 126. As to the construction of the "total disability" clause in an accident insurance policy, see 7 Ann. Cas. 815; 21 Ann. Cas. 1031.