INDIANA LIFE ENDOWMENT COMPANY *v.* CARNITHAN.

[No. 8,467. Filed October 15, 1915. Rehearing denied April 21, 1916. Transfer denied June 28, 1916.]

1. APPEAL.—*Harmless Error.*—*Ruling on Pleadings.*—Error, if any, predicated on the action of the trial court in overruling a motion to require plaintiff to elect to go to trial upon either the first and third paragraphs of his complaint, or upon the second paragraph, was rendered harmless by plaintiff's dismissal of the first and second paragraphs of his complaint before the submission of the case to the jury. p. 574.

2. APPEAL.—*Review.*—*Errors Assignable on Appeal.*—*When Waived.*—*Statute.*—Under §§344, 348 Burns 1914, Acts 1911 p. 415, providing that, if the objection that the complaint does not state facts sufficient to constitute a cause of action is not taken

by answer or demurrer, such objection shall be deemed to have been waived, the question of the sufficiency of the complaint to state a cause of action cannot be raised for the first time on appeal. p. 574.

3. APPEAL.—*Review.*—*Verdict.*—*Evidence.*—*Sufficiency.*—In determining, on appeal, the sufficiency of the evidence to support a general verdict for the plaintiff, the court must look to the evidence most favorable to him.   p. 576.

4. CONTRACTS.—*Anticipatory Breach.*—*Actions.*—Where a party to a contract containing mutual and interdependent conditions and obligations disables himself from performing, or prevents the other party from performing, or, before the time of performance arrives, repudiates the contract and refuses to be bound thereby, communicating such repudiation to the other party, the latter is not only excused from further performance on his part, but may, at his option, treat the contract as terminated for all purposes of performance and maintain an action at once for all damages occasioned by such repudiation, without awaiting the time fixed by the contract for performance.   p. 577.

5. CONTRACTS.—*Anticipatory Breach.*—*Actions.*—Where an action for damages is predicated on a repudiation of a contract, such repudiation must be positive and *absolute* and *unconditional* in order that it may be treated as an anticipatory breach of such contract.   p. 578.

6. INSURANCE.—*Anticipatory Breach.*—*Actions.*—*Damages.*—Where an insurer repudiates its contract and denies liability thereunder and refuses to receive premiums, the assured may elect either to consider the policy at an end and recover the equitable and just value thereof, or he may institute proceedings to have the policy adjudged to be in force in which case the question of forfeiture may be determined, or he may tender the premiums and, if acceptance is refused, wait until the policy becomes payable and then test the forfeiture in a proper action on the policy.   p. 579.

7. INSURANCE.—*Repudiation of Contract by Insurer.*—*Actions by Assured.*—Where an insurer repudiates its contract, refuses to accept premiums thereon and denies liability, the assured cannot treat his policy as in force and effect and still preserve his right to sue for damages for its breach.   p. 579.

8. INSURANCE.—*Anticipatory Breach.*—*Sufficiency of Evidence.*—In an action for damages predicated on an insurer's alleged repudiation of its policy of insurance contracting to pay a death and a total disability benefit, the evidence is insufficient to show the insurer's repudiation of the contract where there is an admission by the assured that the defendant insurance company did not controvert its liability under its policy for permanent disability existing at the time it refused to accept further premiums.   p. 580.

Indiana Life Endowment Co. *v.* Carnithan—62 Ind. App. 567.

9. INSURANCE.—*Entire or Severable Contract.*—A mutual life and disability policy of insurance, providing both a death and a total disability benefit, is not a severable contract where one premium is the consideration for both liabilities.   p. 581.

10. ESTOPPEL.—*Claim under Contract.*—*Election.*—Where, in an action based on a breach of a contract of insurance by the insurer, it appears that the plaintiff, after an alleged repudiation of the policy by the defendant company, elected to still treat the contract as in force for the recovery of benefits thereunder, he thus kept such contract alive for all purposes both for himself and for the insurer and he estopped himself from afterwards predicating a suit thereon for damages for its alleged repudiation.   pp. 583, 586.

11. APPEAL.—*Verdict.*—*Evidence.*—*Sufficiency.*—Where, in an action for damages predicated on an alleged repudiation of a contract of insurance by the insurer, the evidence shows that the assured, the plaintiff below, elected, at the time of such alleged repudiation, to treat the contract as still in force for the recovery of benefits thereunder, a verdict for the plaintiff is not sustained by sufficient evidence.   p. 585

From Vanderburgh Circuit Court; *W. M. Blakey*, Judge.

Action by Charles T. Carnithan against the Indiana Life Endowment Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*William D. Hardy*, for appellant.

*George K. Denton* and *William P. Miedreich*, for appellee.

HOTTEL, J.—On January 19, 1912, appellee filed in the court below his complaint in two paragraphs against appellant and Thomas H. Kirkbride.

The first paragraph, after alleging that appellant was duly organized and incorporated as a mutual life and disability insurance company on the assessment plan, under chapter CXCV of the Acts of 1897 (Acts 1897 p. 318, §§4739-4764 Burns 1908), engaged in the business of insuring the lives of its members and policy holders, and also in insuring

them against disability, proceeds in substance as follows: That on May 19, 1910, appellant executed and delivered to appellee a policy of insurance whereby, in consideration of one dollar and a monthly premium of one dollar, payable on the first day of each calendar month thereafter, it agreed to pay the beneficiary therein named, immediately upon receipt of proofs of the death of appellee, $100 for funeral and other emergency expenses, and thereafter to pay to said beneficiary $12 monthly on the last day of each calendar month during his life, beginning on the last day of the calendar month next succeeding the death of appellee, not to exceed the total sum of $3,000; that by such policy appellant also agreed that, if appellee should by reason of pulmonary tuberculosis become totally and permanently disabled from performing, managing and directing any kind of service or labor or other business upon which he might depend for a livelihood, it would, upon receipt of proofs thereof, pay the monthly benefits of $12 to appellee during the remainder of his life, not to exceed $3,000; that appellee performed all the conditions of the contract on his part to be performed prior to February 1, 1911, at which time appellant repudiated said contract and refused to accept any further payment of premiums thereon and notified appellee that it would not do so, unless within three months from such date appellee would furnish it a certificate of his good health, and that, in case of his failure to furnish such certificate within said period, appellant would thereafter treat his contract of insurance as null and void; that appellee could not furnish such certificate because he was then suffering from, and afflicted with, tuberculosis, which fact appellant well knew at the time it refused to accept said premium and required of

appellee that he furnish such certificate; that it was solely because of appellee's said condition of health that appellant repudiated its said contract of insurance and refused to accept further premiums thereunder; that appellee has been damaged by appellant's repudiation of such contract in the sum of $5,000, etc.

The second paragraph of the complaint differs from the first in that it seeks to recover upon the policy of insurance under the clause thereof hereinafter set out. This paragraph contains the same general averments contained in the first paragraph relative to appellant's organization and incorporation and the issuance of the policy of insurance, and then proceeds in substance as follows: "That after the making of said contract and prior to the 30th day of January, 1911, the plaintiff contracted pulmonary tuberculosis, by reason of which he became and was on said 30th day of January, 1911, and has ever since continued to be, totally and permanently disabled from performing, managing or directing any kind of service or labor or other business upon which he might or did depend for a livelihood. That the plaintiff had performed all the conditions of said policy and contract of insurance on his part to be performed, and *that there is due him by reason of said disability under and by virtue of the terms of said policy the sum of Twelve Dollars ($12) per month, from and including the month of February, 1911, to the present time, amounting to one hundred and thirty-two dollars ($132)*, together with interest on each of said payments at the rate of six per cent per annum, from the time the same became due and payable, and that said defendant has refused and still refuses to pay said sum or any part thereof and had paid no part thereof, and on the 3rd day of October,

1911, denied all liability therefor, *solely on the ground that plaintiff did not have pulmonary tuberculosis and was not totally and permanently disabled.*"    (Our italics.)

On May 6, 1912, appellee filed a third paragraph of complaint, which contained substantially all of the averments of the first paragraph, and, in addition thereto, alleged in detail the facts connected with appellee's failure to pay the premium due February 1, 1911, which averments are in substance as follows:    Appellee was ready and willing to pay the premium on said policy due February 1, 1911, when it became due; that when he paid his last preceding premium he stated to Charles A. Hostetter, the secretary and general manager of defendant company, that he was in poor health and might not be able to get to the office when the next premium was due, and asked Mr. Hostetter to stop at his (appellee's) residence and collect said premium; that Mr. Hostetter then promised and agreed with appellee that he would stop at appellee's residence and collect said premium; that on February 1, 1911, when such premium fell due, appellee was not able to go to the office of the company and pay; that he then had the money in his possession and was ready and willing to pay such premium, but did not take it to appellant's office because of his reliance upon said promise of Mr. Hostetter; that Mr. Hostetter did not call for said premium, as he had agreed to do, and a few days later, when appellee was able to get out, he went to appellant's home office at Evansville, Indiana, and tendered to the said Hostetter the premium of $1, which Hostetter refused to accept, and demanded ten cents more as a penalty; that appellee then produced such additional sum, and said Hostetter then stated to appellee that his

policy had lapsed and his insurance had become forfeited for failure to pay said premium on the day when it was due by the terms of the contract, and stated that no more premiums would be accepted thereon, unless, etc.

A copy of the policy is made an exhibit with each paragraph of complaint. The clause thereof on which the second paragraph of complaint is based provides as follows:

"If said insured shall by reason of * * * pulmonary tuberculosis * * * become totally and permanently disabled from performing, managing or directing any kind of service or labor or other business upon which he might depend for a livelihood, this Company will, upon receipt of satisfactory proof of such total and permanent disability, pay the monthly benefits herein stipulated to the said insured, such payments to begin on the last day of the calendar month next succeeding that in which said claim shall be allowed, and to continue during the life of the insured, the total so paid, however, not to exceed the maximum amount stated in this policy."

Appellant filed an answer in general denial, and also an affirmative answer to the first and third paragraphs of complaint. The affirmative answer admits the execution and delivery of the policy of insurance sued on, and that such policy was conditioned as stated in such paragraph; but it avers that, after its alleged acts of repudiation, appellee made application for total and permanent disability benefits, offered proof thereof, and caused appellant to expend the sum of ——— dollars in investigating the facts as to whether appellee was disabled within the meaning of the policy; and until the filing of this suit, and thereafter, appellee demanded and insisted on such policy being in force and effect,

and demanded the payment of disability benefits on the ground that he was disabled, thereby electing not to treat said actions of appellant as a repudiation of such contract, and thereby estopping himself from so treating such acts.

Issues were joined on such answer by reply in general denial. Appellant also filed a motion to require appellee to "elect to go to trial upon either the first and third paragraphs of his complaint, or upon the second paragraph, that is, to proceed upon the theory that the contract of insurance was in full force and effect for all purposes, or upon the theory that the said defendant had repudiated and broken said contract." This motion was overruled, but no exception was reserved to such ruling, and, in any event, was rendered harmless by appellee's dismissal of the first and second paragraphs of his complaint, before the case was finally submitted to the jury. A verdict was returned in favor of appellee for $1,000. A motion for a new trial filed by appellant was overruled and judgment rendered on the verdict.

Two errors are assigned and relied on for reversal. The first challenges the ruling on appellant's motion for new trial, and the second challenges the sufficiency of the third paragraph of complaint to state a cause of action. This action was commenced since the amendment of §§344, 348 Burns 1908 by the act of 1911 (Acts 1911 p. 415, §§344, 348 Burns 1914), and hence no question is presented by the second error assigned. *Stiles* v. *Hasler* (1913), 56 Ind. App. 88, 104 N. E. 878. Appellant has expressly waived all the grounds of its motion for new trial, except Nos. 1, 2, 3, 7, 10 and 11. The first ground challenges the verdict

of the jury as not being sustained by sufficient evidence, and it will be considered first.

The policy of insurance was read in evidence, and contains the following provisions, among others, viz.:

"First.—The person to whom this policy is issued shall pay to the authorized collector of this Company, having the receipts of the Secretary, the stipulated premiums named in the face of this policy, on or before the first day of the calendar month on which the same shall become due * * *. Second.—The first stipulated premium provided in the face of this policy is due and payable upon the delivery of this policy, and this policy will not be in force until said first stipulated premium is paid; but after the payment of the first stipulated premium as above provided, if the premiums have not been paid in advance, as provided above and on the face of this policy, the Company will continue this policy in full force and effect for a period not to exceed three months from the time of the first default in payment, during which time the holder of this policy may pay up all delinquent dues herein by paying ten cents extra for each month in default and furnishing a satisfactory certificate of continued good health to the company. Third.—But if all the premiums, dues, assessments and penalties are not paid in full and a health certificate furnished as above provided within three months from the time of the first default in the payments on this policy, then this policy shall lapse and become null and void and ipso facto forfeited without notice, and all rights of the insured or his or her beneficiaries herein named shall cease; and all payments made hereon shall become forfeited to the Company. * * *. Eleventh. If the holder of this policy shall become totally and permanently disabled, and shall thereby receive the benefits as provided herein, at the death of such policy holder, all

right or claims under the terms of this policy, whether of the insured or of the beneficiaries herein named, shall cease and terminate. But if the insured shall continue to pay all premiums, dues and assessments on this policy during said disability, then the rights and interests of the beneficiaries shall be preserved, and after the death of the insured the beneficiaries will receive the monthly benefits as provided herein, not to exceed, however, the maximum amount named in this policy, including the amount drawn by the insured during disability."

It is conceded by appellee that he did not pay when due the premium which, by the terms of his policy just indicated, fell due February 1, 1911, but appellee claims that his failure to so pay was induced by appellant's promise, and that appellant thereby waived the payment so provided. Upon this question appellee's evidence substantially supports the averments of his complaint.

Appellant, while it introduced evidence denying said promise and waiver, recognizes that upon such question this court must look to the evidence most favorable to appellee, and hence that it will 3. be bound by appellee's statements in reference thereto, but insists, in effect: (1) That appellee's own statement does not show a repudiation or cancellation of the policy of insurance, but, at most, discloses appellant's intention to cancel the policy some time in the future, unless appellee complied with certain conditions, and that there is no averment that such intent was ever, in fact, executed; (2) that after appellant's alleged act of repudiation and breach of its contract had become known to appellee he elected to continue the contract in force by demanding the benefits of the clause thereof above set out, on which he based his

second paragraph of complaint, and thereby estopped himself from claiming damages on account of such repudiation.

The questions, therefore, which we are required to determine are: (1) Is the evidence in the case sufficient to warrant the finding of the jury that appellant repudiated or renounced its contract, so as to constitute an anticipatory breach thereof such as to authorize an action for damages? (2) Assuming that appellant did so renounce its contract, does the evidence show that such renunciation was accepted by appellee, and that appellee thereafter treated the contract as rescinded for all purposes, except that of predicating an action for damages thereon on account of its repudiation?

The law applicable to these questions seems to be well settled. The doctrine that there may be an anticipatory breach of an executory contract resulting from an absolute refusal to perform is now accepted and followed in most jurisdictions; that is to say, where parties enter into a contract embodying mutual and interdependent conditions and obligations, and one of the parties thereto disables himself from performing, or prevents the other party from performing, or before the time of performance arrives repudiates the contract and "refuses to be longer bound thereby, communicating such repudiation to the other party, the latter party is not only excused from further performance on his part, but may, at his option, treat the contract as terminated for all purposes *of performance*, and maintain an action *at once* for damages occasioned by such repudiation, without awaiting the time fixed by the contract for performance * * *." (Our italics.) *O'Neill* v. *Supreme Council, etc.* (1904), 70 N. J.

Law 410, 57 Atl. 463, 1 Ann. Cas. 422, and cases cited; *Indiana Life, etc., Co.* v. *Reed* (1913), 54 Ind. App. 450, 458, 459, 103 N. E. 77. This doctrine has been long announced and followed in the English courts, the leading case being that of *Hochster* v. *De Latour* (1853), 2 El. & Bl. 678, 22 L. J. (Q. B.) 455. While some of the state courts, notably Massachusetts (*Daniels* v. *Newton* [1874], 114 Mass. 530, 19 Am. Rep. 384; *Collins* v. *Delaporte* [1874], 115 Mass. 159), have refused to follow this doctrine, the great weight of authority in such courts is in its favor (*O'Neill* v. *Supreme Council, etc., supra; Day* v. *Connecticut, etc., Ins. Co.* [1878], 45 Conn. 480, 495, 29 Am. Rep. 693; *Mutual Reserve, etc., Assn.* v. *Taylor* [1901], 99 Va. 208, 37 S. E. 854; 3 Elliott, Contracts §§2028, 2029 and cases cited in notes), and it also has the approval of the United States Supreme Court. *Roehm* v. *Horst* (1899), 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953. In each of these cases will be found a comprehensive discussion of the doctrine, together with a collection of numerous cases decided by the courts of different jurisdictions. An examination of these cases will show that the doctrine has been applied by various state courts to insurance contracts similar to that under consideration, and this court in the case of *Indiana Life, etc., Co.* v. *Reed, supra,* held the doctrine applicable where a contract was involved identical with the one now under consideration. The cases which approve and follow the doctrine, however, all agree that the repudiation of the contract relied on

5.   must be positive and *absolute and unconditional* in order that it may be treated as an anticipatory breach of such contract. *Dingley* v. *Oler* (1896), 117 U. S. 490, 502, 503, 6 Sup. Ct. 850, 29 L. Ed. 984, 988; *Indiana Life, etc., Co.* v. *Reed,*

*supra*, and cases cited; *Zuck* v. *McClure* (1881), 98 Pa. 541; 1 Beach, Contracts §413.

The authorities also emphasize the fact that one party to such a contract may not by himself rescind it, and that a repudiation by him alone, although absolute and sufficient to justify the other party in treating it as an anticipatory breach, does not necessitate such action by the latter party, but the latter party may elect to stand upon his contract and perform, or offer to perform, all the conditions thereof required of him, and then, when the day of performance arrives, proceed to enforce his contract. It seems that in cases like the one under consideration, 6. where an insurer repudiates its contract and denies liability thereunder, and refuses to receive premiums, the policy holder may pursue either of three courses, viz.: First, he may elect to consider the policy at an end and recover the equitable and just value of the policy. Secondly, he may institute proceedings to have the policy adjudged to be in force in which case the question of forfeiture may be determined. Thirdly, he may tender the premiums and if acceptance is refused wait until the policy by its terms becomes payable and then test the forfeiture in a proper action on the policy. *Day* v. *Connecticut, etc., Ins. Co., supra; Metropolitan Life Ins. Co.* v. *McCormick* (1897), 19 Ind. App. 49, 56, 49 N. E. 44, 65 Am. St. 392, and cases cited. In such cases, however, the policy holder may not treat his policy 7. as in force and effect and still preserve his right to sue for damages for its breach. Upon this subject the Supreme Court of the United States, in the case of *Roehm* v. *Horst, supra,* p. 13, quotes with approval the following language of Lord Justice Bowen:

" 'We have, therefore, to consider upon what principles and under what circumstances it must be held that a promisee, who finds himself confronted with a declaration of intention by the promisor not to carry out the contract when the time for performance arrives, may treat the contract as broken, and sue for the breach thereof. It would seem on principle that the declaration of such intention by the promisor is not in itself and unless acted on by the promisee a breach of the contract; and that it only becomes a breach when it is converted by force of what follows it into a wrongful renunciation of the contract.' Its real operation appears to be to give the promisee the right of electing either to treat the declaration as *brutum fulmen* (a harmless thunderbolt, a noisy but ineffectual menace;) and holding fast to the contract, to wait till the time for its performance has arrived, or to act upon it, and treat it as a final assertion by the promisor that he is no longer bound by the contract, and a wrongful renunciation of the contractual relation into which he has entered. But such declaration *only becomes a wrongful act if the promisee elects to treat it as such. If he does so elect, it becomes a breach of contract, and he can recover upon it as such.*' " (Our italics.)

Going back to the first question suggested, we inquire whether the evidence shows a repudiation by appellant of the contract of insurance within the meaning of the law as expressed in the cases cited. Appellee's own evidence and admissions in his brief, we think, necessitate a negative answer to this question. Upon this subject appellee, in his brief, in answering appellant's argument on election of remedies, in attempting to show that there was no inconsistency between his effort to collect under the disability

clause hereinbefore set out for permanent disability resulting from pulmonary tuberculosis contracted before the alleged repudiation, and his final recovery of damages for repudiation of such contract, says: "But there was another phase to this case. *The company admitted the policy was in full force and effect up to the first day of February.* Therefore, if the member became disabled within the terms of the contract prior to that date, *he was entitled to the sum of $12 per month during the continuance of such disability, and about this there was no concontroversy with the appellant."* (Our italics.) It appears, therefore, from appellee's own admission, that appellant never controverted the fact of its liability under its policy for any permanent disability resulting from pulmonary tuberculosis existing at the time of its refusal to accept further premiums. All appellant did, in effect, was to say to appellee that, because of his failure to pay his premium due February 1, 1911, it would receive no more premiums; that for such failure he had forfeited his right to keep his policy alive for the incurrence of future liability, unless, within the time specified in his policy, to wit, three months from February 1, 1911, he furnished appellant a certificate of good health as required by his policy; that in case of his failure to furnish such certificate within the time specified his policy would then be canceled. While the contract of insurance herein involved provided for a liability against appellant resulting from either death or disability, the consideration for both of such liabilities was one and the same premium, and hence such contract was not severable.

9:

The third paragraph of the complaint proceeds upon the theory of a repudiation of the contract in toto, and it was upon such theory that the case

was tried and the judgment below rendered. Appellee's admission just set out shows that there was not such a repudiation. Giving to such admission the interpretation most favorable to appellee's contention, the very most that it can be said to show is that appellant's acts and conduct were such as to have justified appellee in treating them as a repudiation of the contract if he had so elected. By this statement we do not mean to be understood as saying that appellee would, in fact, have been justified in electing to so treat appellant's acts and conduct. Whether, under the law as herein announced, appellee would have been so justified, is not of controlling influence, in view of the other admitted facts in the case, and hence such question need not be and is not decided. This is so because appellee did not so treat said acts and conduct, but, on the contrary, he elected to treat said contract of insurance as still alive and subsisting for the purpose of enforcing the provision thereof which gave to him benefits on account of permanent disability resulting from pulmonary tuberculosis claimed to have been contracted before and existing at the time of such alleged repudiation. Upon this subject appellee in his brief, in connection with his statement above set out, further says: The appellee "contended that he became so disabled in the month of January, and in order to protect his rights under this condition it was necessary for him, as required by the terms of the contract, to make proof of such disability, and this he did. * * * Regardless of whether there was a repudiation of the contract or not, the plaintiff was entitled to recover if disabled prior to the first day of February. The second paragraph of the complaint was based upon this theory. Indeed, as attorneys for appellee

we would have been neglectful of our duty if we had not given the notices required by the contract in order to protect our client on this phase of the controversy. The appellant might have sustained its contention that there was no repudiation of the contract, in which event, the member although entitled to recover for disability beginning prior thereto, might have lost his right by failure to make the proofs required by his contract."

It is therefore admitted that after the alleged repudiation of his contract appellee, instead of treating the contract as rescinded and ended except for the purposes of a recovery of damages on account of such repudiation, elected to still treat the contract in force for recovery of benefits thereunder; in other words, appellee was trying to hold to two inconsistent remedies, viz.: he was trying to keep the contract alive in order that he might enforce one of its provisions and at the same time treat it as canceled for all purposes except for the purpose of predicating damages for a repudiation thereof. Appellee by thus electing to keep such contract alive for his own benefit kept it alive for all purposes, both for himself and for appellant, and estopped himself from afterwards predicating a suit thereon for the alleged repudiation. Upon this subject the court, in the case of *Day* v. *Connecticut, etc., Ins. Co., supra,* said: "In *Howland* v. *Continental Life Ins. Co.,* 121 Mass. 499, the premium fell due on Sunday, and payment was tendered on Monday and refused. A suit was brought eleven months afterwards, with no previous notice to the company that the plaintiff elected to abandon the policy. The court held that the suit could not be maintained, on the ground that the election was not within a reasonable time. "In *McAllister* v. *The New Eng-*

*land Mutual Life Insurance Co.*, 101 Mass. 558, the insured refused to pay a premium note, and declared that 'he would not have anything more to do with the insurers and abandoned the whole thing'; but he retained the policy and the insurers retained the note, nor did it appear that they consented to the abandonment. It was held that the policy remained in force. These authorities show, and that alone is the purpose for which we cite them, that in order to terminate the policy in such cases the concurrence of both parties is necessary." Again in the case of *Bernstein* v. *Meech* (1891), 130 N. Y. 354, 358, 29 N. E. 255, 256, the court, in discussing the same question, said: "It is urged that the plaintiff's letter to the defendants must be treated as a refusal to perform and as a breach of the contract on his part, which relieved them from its obligation, and afforded to the defendants a right of action. It is true that when one of the parties to an executory contract has renounced it, the other party to it may act upon the assumption of such a breach before the time for performance arrives. (*Windmuller* v. *Pope*, 107 N. Y. 674) * * *.

"But whatever view may have been taken of the right of the defendants to treat the contract for the purposes of its performance as at an end and to act upon that assumption when they received the plaintiff's letter, they disposed of that question by their letter to him. By this it appeared that the defendants elected to keep the contract in force for the purposes for which it was made. This operated alike upon the rights of both parties, and the plaintiff was justified in so understanding it. In that view the contract was kept alive until the time arrived for performance, and the obligations of the defendants no less than those of the plaintiff for

that purpose remained effectual. (*Johnstone* v. *Milling*, L. R. [16 Q. B. D.] 460; *Frost* v. *Knight*, L. R. [7 Exch.] 111; *Zuck* v. *McClure*, 98 Penn. St. 541.)"

If the only evidence of appellee's election to treat his contract as in force was that of the filing of his second paragraph of complaint herein, the later dismissal of such paragraph might have some controlling influence and render the authorities cited by him applicable. Upon this question we need not and do not express any opinion, because appellee, by his acts and conduct herein indicated, at the time of the alleged repudiation and before the bringing of his suit, settled the question of such election and estopped himself from afterwards electing to rescind such contract and to sue for damages thereon.

We are therefore of the opinion that the decision of the trial court is not sustained by sufficient evidence; and hence that such court erred in 11. overruling the motion for a new trial. Before concluding this opinion, we deem it proper to say that, if appellee's acts and conduct at the time of and after the alleged repudiation had shown that he was merely claiming and insisting on his right to recover as damages the value of the benefits provided by the disability clause of his contract on account of the repudiation of such contract, instead of showing an intention to treat such contract as still in force and an effort to prove his claim under the provisions thereof, an entirely different question would be presented for our determination. What we have said is intended to be limited in its application to the contract in suit and to the facts of this case as presented by the issues and evidence. As to what rule of law would be applicable in a case involving a contract of in-

surance containing two separate, independent, and severable provisions of liability, with a complaint in two paragraphs, one predicated on, and seeking to recover on, one provision of the policy, and the other paragraph predicated on, and seeking to recover because of a repudiation of, the other provision of such policy, we express no opinion, because no such question is presented by the pleadings in this case, and hence need not be and is not decided.

As before stated, the third paragraph of complaint on which the judgment herein is based is an action for damages for repudiation of the contract, and the case proceeded to trial and was in fact tried on such theory; and appellee by his acts and conduct in electing to treat the policy in force and to recover monthly benefits under its provisions, as before indicated, estopped himself from treating the contract as rescinded.

Other questions are presented by this appeal, but, if our view of the case herein indicated be correct, such questions are not of controlling importance and hence need not be decided. The judgment is reversed with instructions to the trial court to sustain appellant's motion for a new trial and for such other proceedings as may be consistent with this opinion.

NOTE.—Reported in 109 N. E. 851. Remedy of beneficiary on repudiation of contract by insurer, 14 L. R. A. (N. S.) 1111, note. See under (6) 29 Cyc 213.