THE PRUDENCE LIFE INSURANCE COMPANY v. MORGAN.

[No. 20,108. Filed February 14, 1966.]

*William B. Combs,* and *Combs & Schrode,* of Evansville, for appellant.

*John H. Jennings* and *Harold M. Wilson,* of Evansville, and *Steve Bach,* of Mount Vernon, for appellee.

SMITH, P. J.—This is an action predicated upon an alleged breach of a health and accident insurance policy, brought by the appellee against the appellant.

The appellee filed an amended complaint in two paragraphs, to which the appellant filed an answer in five (5) paragraphs. Appellee filed a reply in two (2) paragraphs to appellant's second paragraph of answer, and a reply in one (1) paragraph to appellant's fourth paragraph of answer.

The amended complaint, in substance, alleges that the appellant is a duly organized and existing corporation engaged in the business of writing accident, hospital, disability and life insurance throughout the United States and particularly in the Commonwealth of Kentucky and the State of Indiana; that on or about January 30, 1962, appellant issued and delivered to the appellee its contract of insurance, the same being policy number 910643; that by the terms of said insurance policy, the appellant agreed to pay the appellee the sum of one hundred fifty dollars ($150.00) per month for total disability as the result of illness or accident as long as he lived and was so disabled and for waiver of premium during total disability continuing for six months after the policy was in force. That appellee duly paid all premiums required and duly performed every condition under the policy to be performed; that appellee on March 5, 1962, while engaged in moving hay in his barn, was suddenly overcome and suffered an attack of smothering weakness and inability to breathe, and, as a result of this attack, he became permanently and totally disabled and was confined to a hospital; that after being released from the hospital he was confined to his bed and was unable to perform work of any nature; that he was treated continuously and regularly by a legally qualified physician; that his condition was diagnosed as lung, heart trouble, and emphysema; that his ability to breathe, walk, move about or control his faculties was permanently affected and impaired; that appellee gave a written notice to the appellant within the time prescribed in the policy of insurance and furnished the appellant written proof of loss and for his claim for total and permanent benefits within the time prescribed in said policy; that appellant began paying appellee

total disability benefits at the rate of one hundred fifty dollars ($150.00) per month; that a partial payment was made by the appellants of fifty-five dollars ($55.00) covering the period from March 5, 1962 to March 16, 1962; that appellant made another payment of one hundred fifty dollars ($150.00) covering the period from March 16, 1962 to April 16, 1962; that thereafter appellant refused to pay any further benefits and, on or about July 6, 1962, notified appellee that the policy of insurance was cancelled; that appellant refused to accept further proofs of loss and refused to be bound by the terms of the insurance contract; that appellant wrongfully revoked, repudiated and breached its contract of insurance with appellee; that at said time appellee was fifty-eight (58) years of age with a life expectancy of 18.90 years; that appellee was and is permanently and totally disabled, forever unfit physically to perform any work, and was entitled to be protected by said policy of insurance and to receive the benefits thereunder for the rest of his life; and prayed for judgment in the sum of forty-two thousand nine hundred fifty dollars ($42,-950.00).

Upon the issues joined by the complaint, the answer of the appellant, consisting of five (5) paragraphs, the reply of the appellee, consisting of two (2) paragraphs, to appellant's second paragraph of answer, and the reply of the appellee, consisting of one (1) paragraph, to appellant's fourth paragraph of answer, the cause was submitted to a jury for trial. The jury returned a verdict for the appellee and against the appellant, awarding the appellee as damages the sum of nineteen thousand eight hundred dollars ($19,800.00). Judgment was entered in accordance therewith.

Thereafter the appellant filed a motion for a new trial which was overruled. The motion for a new trial contains the following specifications of error:

1. the verdict of the jury is contrary to law;
2. the verdict of the jury is not sustained by sufficient evidence;

3. error of law occurring at the trial, in this, to-wit:

the court erred in refusing to give to the jury at the close of plaintiff's evidence in chief a peremptory instruction numbered "A" directing a verdict for the defendant;

4. error of law occurring at the trial and excepted to by the defendant, in this, to-wit:

the court erred in refusing to give to the jury at the conclusion of all the evidence peremptory instruction numbered "B" directing the jury to return a verdict for the defendant;

5. error of law occurring at the trial as follows:

(a) the court erred in giving to the jury at the request of the plaintiff instructions numbered 1, 2, 6, 8, 11, 14 and 15;

(b) the court erred in refusing to give to the jury instructions numbered 9, 11, 12, 13, 15, 17, 18, 19 and 20 requested by the defendant;

6. error of law occurring at the trial, in this, to-wit:

the court erred in admitting into the evidence certain testimony of Dr. W. G. Edds, witness for the plaintiff;

7. error of law occurring at the trial, in this, to-wit:

the court erred in permitting plaintiff's counsel to introduce into evidence the 1937 Standard Mortality Table;

8. error of law occurring at the trial, in this, to-wit:

the court erred in refusing to admit into evidence a physician's statement made by Dr. Merrill W. Schell concerning the physical condition of the defendant;

9. irregularity in the trial proceedings of the court by which the defendant was prevented from having a fair trial, in this, to-wit:

the trial court abused his discretion in taking the action as set forth in specifications 6, 7 and 8 of this motion for a new trial; and

10. error in the assessment of the amount of damages.

The sole assignment of error was the overruling of appellant's motion for a new trial.

Pursuant to Supreme Court Rule 2-17 (e) the appellant has grouped its specifications of error, as set forth in the motion for a new trial, into two main areas. They are as follows:

1. That the decision of the trial court is contrary to law in the following respects:

(A) the appellant maintains that the trial court erred in not applying Kentucky law. To support this argument, the appellant contends that in cases where parties to an insurance contract are in different jurisdictions, the state in which the application is made, the premiums paid and the policy of insurance is delivered is the place where the contract is entered into; and any interpretation of the policy is to be governed by the law of the state in which the policy is delivered and the premiums paid.

The appellee challenges this position of the appellant by stating that the *remedy for the repudiation of an insurance policy is controlled by the law of the forum,* which in this case is the State of Indiana; and further the appellee maintains that the appellant relied solely upon Indiana law until "one working-day" prior to the time the case came on for trial, at which time, for the first time since the institution of this action, the appellant petitioned the trial court to apply the law of Kentucky.

The rule of law generally followed is that where a cause of action is brought in a state other than the state in which the action arose, matters of a substantive nature are governed by the lex loci; that procedural and remedial matters are governed by the law of the forum; and that the law of the forum is applied in order to determine what constitutes matters of substantive law and what constitutes matters of remedy and procedure. *Slinkard* v. *Babb* (1953), 125 Ind. App. 76, 82, 112 N. E. (2d) 876; *Holtz* v. *E. J. & E. Ry.* (1951), 121 Ind. App. 175, 181, 98 N. E. (2d) 245; *Morley* v. *Cleveland C. C. & St. L. R. R.* (1935), 100 Ind. App. 515, 522, 194 N. E. 806.

It is the specific contention of the appellee that the remedy prescribed for the repudiation of a contract is governed by

the law of the forum (State of Indiana). To support this contention the appellee has cited the case of *Fry Brothers* v. *Theobold* (1924), (Ky.) 265 S. W. 498, at page 499. The Supreme Court of Kentucky in this case spoke as follows:

> "Proceeding upon the lines of judicial comity, the authorities are uniform in holding that the validity of the contract is to be determined by the laws of the state in which it is made, *and that the remedies to be enforced are those provided by the state in which suit is brought.*" (Emphasis supplied)

In further support of the contention the appellee has also cited the following cases: *Metropolitan Life Insurance Co.* v. *Kendall* (1955), (Ark.), 284 S. W. (2d) 863, at page 864; *John Hancock Mutual Life Ins. Co.* v. *Yates* (1936), (Ga.), 185 S. E. 268.

> It is our opinion that there is merit in appellee's contention; and that the remedy provided for the repudiation of an insurance contract is determined by the law of the forum, which in this case is the State of Indiana.

It is further the contention of the appellee that even if it is determined that the law of Kentucky rather than the law of Indiana controls the remedy provided for the repudiation of the insurance contract in question, the appellant in petitioning the trial court to take judicial notice of the law of Kentucky, pursuant to the provisions of Section 2-4804 Burns Indiana Statutes, failed to give reasonable notice to parties litigant as required by said statute. Specifically the appellee contends that a notice to adverse parties consisting of "one working-day" prior to the date of trial is not a reasonable notice as contemplated by the "Uniform Judicial Notice of Foreign Law Act." In view of the fact that we have determined that the law of Kentucky does not control the remedy for the repudiation of the insurance contract in question, it is not incumbent upon us to decide this question.

The appellee also advances the argument that even if the law of Kentucky should have been applied in determining

the remedy for the repudiation of the insurance contract in question, the appellant failed to state how or in what way the trial court did not apply the law of Kentucky or in what respect the law of Kentucky differs from the law of Indiana.

(B)  The appellant next contends, under the second specification of the argument, that the decision of the trial court is contrary to law, and is not supported by the evidence, that the appellee is not entitled to recover because the uncontroverted evidence reveals that the illness of the appellee, upon which he predicates his claim for benefits, had its inception prior to the effective date of the issuance of the policy of insurance; and was, therefore, not covered by the terms of the insurance contract.

The appellee answers this argument by contending that on appeal only the evidence most favorable to the appellee may be considered; and that there was ample evidence to support the finding of the jury that the existence of emphysema upon which the appellee predicates his claim for benefits was not a pre-existing physical condition.

Specifically the appellant maintains that the insured in this case suffered from a pre-existing physical ailment which, according to terms of the insurance contract, would preclude the insured from asserting any claim for benefits thereunder.

This is a factual question to be determined by the jury. As has so often been stated by our courts of appeal in determining whether or not a decision of a trial court is supported by sufficient evidence, only the evidence most favorable to the appellee may be considered.

From an examination of the record evidence most favorable to the appellee the following facts are revealed:

On January 11, 1962 one Richard Nelson, an agent of the appellant, contacted the appellee and sold him a health and accident insurance policy to be issued by the appellant insurance company. The appellee supplied the information as required to be supplied in filling out the application for insurance. The appellee stated that he had suffered an attack of appendicitis in the year of 1957; that in the year of 1959

he was accidently injured and as the result of said accident received several fractured ribs and a punctured lung; and, as the result of the 1959 accident, the appellee was hospitalized and x-ray pictures were taken of his lungs. At the time of signing the application for insurance, the appellee authorized the appellant to examine and secure all of appellee's medical records showing his complete health and medical history. The appellee received a written notice from the appellant insurance company informing him that the appellant was making an investigation of appellee's health records; and later the appellee received a written statement from the appellant that his application for health and accident insurance had been approved and thereupon the appellee received his policy of insurance issued by the appellant.

The facts further reveal that on March 5, 1962 the appellee suffered an attack, resulting in shortness of breath, while he was engaged in pitching hay. Thereafter Dr. Edds, appellee's family physician, examined the appellee and diagnosed the attack suffered by the appellee as a "heart attack." Dr. Edds then referred the appellee for examination to one Dr. Merrill Schell, Owensboro, Kentucky, a heart specialist. Sometime thereafter the appellee submitted his claim for benefits under the insurance policy to the appellant company; and, as a result of this claim, he received disability benefits in the amount of two hundred five dollars ($205.00) covering a period of approximately forty (40) days. On June 9, 1962, Dr. Edds notified the appellant company that the appellee was totally and permanently disabled, the diagnosis of appellee's physical condition, as furnished to Dr. Edds by Dr. Schell, being pulmonary fibrosis and emphysema. Shortly after receiving this information from Dr. Edds, the appellant company notified the appellee that he had not furnished the appellant a complete health history in his application for insurance; and further notified the appellee that because of his failure to furnish a complete health history that the appellant was cancelling the appellee's insurance policy as of the date of issu-

ance. The reason for cancellation reads, in pertinent part, as follows:

> "The investigation of your recent claim is now complete and information has come to our attention that you did not give us a complete health history on the application for the insurance. . . . Therefore, your policy is cancelled as of date of issue."

Appellee's family physician, Dr. Edds, testified that he had known, seen and treated the appellee and his family for a period of twelve years, and that the appellee was a "hard-working" man who never evidenced any signs of indication of suffering from emphysema until March 5, 1962. He testified as follows:

"Q. Approximately how long have you known Lee Roy Morgan?

"A. About twelve years.

"Q. Have you been his physician and treated his family during that time?

"A. Yes.

"Q. In addition to treating him or his family professionally, had you had occasion to see him and observe him around his home or at different places in McClean County?

"A. Yes, he was a full time farmer and a part time carpenter.

"Q. Were you familiar with his physical condition over the years?

"A. Yes.

"Q. Did you have occasion at different times to see him and know about him? His habits and workings and things like that? What would you say, doctor, about the type of man he was?

"A. Mr. Morgan was a hard working type of fellow. He has always worked hard all his life—up to his last illness.

"Q. On March 5, 1962, did you have occasion to examine him?

"A. Yes, he came into my office and complained of a lot of chest pain and having shortness of breath. I think he was pitching hay or something like that and I think

he had an attack of shortness of breath, this chest pain. I did a cardiogram on him at that time and I read it as negative. I x-rayed his lungs and I saw a large emphysema on his right lung and I again sent him to Dr. Schell at Owensboro to evaluate him as far as his lungs were concerned.

"Q. When he came in did he describe this attack?

"A. Yes. The first symptom was a coronary attack.

"Q. Did you have any occasion to think he had emphysema at that time?

"A. No, I did not.

"Q. Did you ever know anything about any emphysema concerning him at that time?

"A. No. . . . .

"Q. During the entire time that you treated him was there any evidence of any emphysema?

"A. No.

"Q. In addition to seeing him, I mean in addition to treating him, you would see him at different occasions?

"A. Yes. . . . .

"Q. On these different occasions that you treated Mr. Morgan and particularly in that accident in 1959 and the onset of this illness which you describe as March 5, 1962, when he gave you the history and told you whatever he did tell you, did you have any occasion to doubt the truth of the statements he gave you?

"A. No.

"Q. Did you have any occasion to think that on January 30th, 1962, when this policy of insurance was issued that the man was in bad health in any sense?

"A. No."

The evidence also revealed that Dr. Edds testified that a person could be symptom free, as Morgan was, and have a sudden acute attack of emphysema, and that, in his opinion, is what occurred to Morgan on March 5, 1962.

The evidence most favorable to the appellee further discloses that it was Dr. Schell who treated appellee in 1959 for the broken ribs and punctured lung, and who took the very x-rays which, according to appellant's expert witnesses,

disclosed a condition of emphysema. That Dr. Schell took the x-ray pictures of appellee's lungs in 1959 and did not find any evidence of emphysema at that time or at any other time prior to March 5, 1962. That Dr. Schell stated in his report that to the best of his knowledge and belief, Mr. Morgan *did not* have emphysema prior to March 5, 1962, and that he discovered nothing to indicate that Mr. Morgan was not in good health prior to March 5, 1962. The relevant parts of Dr. Schell's report are as follows:

"Q. Did you ever inform Mr. Morgan, prior to March 5, 1962, that he had any type of physical ailment or impairment and that he was not in good health?

"A. No. . . . .

"Q. Prior to March 5, 1962, did you have any knowledge that Mr. Morgan had emphysema?

"A. No. . . . .

"Q. Do you know of anything that would have indicated to you that Mr. Morgan had something wrong with him and was not in good health prior to March 5, 1962?

"A. No."

In addition to the medical evidence of Dr. Edds and Dr. Schell, the appellee produced as witnesses a number of neighbors with whom the appellee had worked up until he suffered his attack on March 5, 1962. Each of these witnesses testified, without exception, that the appellee was a strong and healthy farmer-carpenter who had engaged in unusually hard and strenuous manual labor up until March 5, 1962. The evidence of these witnesses was unrebutted by either the appellant or by any of its witnesses.

The appellee testified in his own behalf stating in his testimony that he had been in good health all of his life. That, prior to March 5, 1962, he had never experienced any shortness of breath or blueness around his lips, each of which is recognized by the medical fraternity as a symptom of emphysema.

Appellant also contends that any illness or physical disability can eventually in some way be associated or connected with a pre-existing physical weakness, dormant germ or bacteria which may have been present in the body of the insured for a long period of time and which may have been responsible in some manner in causing the alleged disability of the insured.

Answering this argument the appellee contends that if a person, in order to secure insurance, states in his application for insurance that he is in good health, it does not necessarily mean that he warrants himself to be in good, perfect and absolute health. To support this contention, the appellee cites the case of *Alabama Gold Life Ins. Co.* v. *Johnson, Administrator* (1887), 2 So. 125, 131. The Alabama Supreme Court spoke as follows:

> *It cannot be supposed that one who, for the purpose of procuring insurance, alleges himself to be in good health, shall be understood as warranting himself to be in perfect health;* for this is seldom, if ever, the fortune of any human being; and, 'we are all born' as said Lord Mansfield in *Willis* v. *Poole,* Park Insurance 555, 'with the seeds of mortality in us.' These inquiries as to symptoms of diseases, as said by Mr. Parsons, therefore, must mean whether they 'have ever appeared in such a way, or under such circumstances, as to indicate a disease which would have a tendency to shorten life;' and he adds: 'It is with this meaning the question is left to the jury.' "

The evidence most favorable to the appellee can be summarized as follows: The two physicians, Dr. Edds and Dr. Schell, who examined and treated the appellee, testified that, from their respective examination of the appellee, no symptoms of emphysema were apparent in the appellee, and that there was no indication whatsoever that the appellee was suffering from emphysema prior to March 6, 1962. The written report based upon the examination made by Dr. Schell discloses that he did not discover any evidence of emphysema as revealed by the x-ray pictures taken of the lungs

of the appellee in 1959; and that he personally supervised the taking of such x-ray pictures. The testimony of a number of lay witnesses, who daily worked and were associated with the appellee, stands unrebutted that the appellee, prior to March 5, 1962, worked long hours at hard manual labor; and that at no time prior to said date did the appellee show any evidence of emphysema such as shortness of breath or blueness around the lips.

It is our opinion that the record is replete with evidence conclusively establishing the following facts:

1. that the appellee was not personally aware of the fact that he was afflicted with emphysema prior to March 5, 1962, which was approximately two months after making his application for insurance; and

2. that the appellee evidenced no apparent symptoms of emphysema prior to March 5, 1962.

There appears to be sufficient evidence of probative value from which the jury could have arrived at its verdict.

Following the discussion of the question as to whether the appellee had presented sufficient evidence upon which the jury could base its verdict, the appellant has grouped other specifications of error in the first main area of argument, as set out in appellee's brief, all of which specifications of error are contained in the motion for a new trial. Specifically the appellant alleges that the trial court erred in giving appellee's instructions 1, 2, 6, 8, 11, 14 and 15, and in refusing to give appellant's tendered instructions 11, 12, 13, 15, 17, 18, 19 and 20.

The appellant in its brief made no effort to discuss any of said instructions except appellee's instruction number 8 and appellant's tendered instruction number 9. The Court in this opinion will therefore limit its discussion to these two instructions. Instruction number 8 reads as follows:

"The Court charges the jury that if you find the said defendant insurance company issued and delivered to the

plaintiff, Lee Roy Morgan, the said insurance policy in question and accepted the premiums therein provided from the said Lee Roy Morgan, then I instruct you that even if any disease or sickness did pre-exist the date of said insurance policy and said defendant insurance company knew, or in the exercise of reasonable care should have known, of same at said time before issuing and delivering said insurance policy and acceptance of premiums, you would have a right to find thereby that said defendant insurance company had waived any right to cancel said policy by reason thereof."

It is the contention of the appellant that appellee's instruction number 8 informed the jury that a pre-existing disease or illness of the insured would not preclude recovery if the appellant knew, or in the exercise of reasonable care should have known, of such pre-existing disease or illness at the time the policy of insurance became effective; and that this fact would have precluded the appellant insurance company's right to enforce this provision of its policy of insurance.

It is our opinion that appellant's interpretation of the meaning of the instruction is not correct and that the position of the appellant is untenable. Said instruction contained no such provision. All the instruction said was that if the insurance company knew of a pre-existing disease or illness of the insured, or should have known, it could not for this reason *cancel* the policy. In other words, this instruction dealt solely with the question of wrongful *cancellation*. We feel that the appellant is in error in attempting to construe this instruction to mean that it nullified the insurance contract's provision relative to a pre-existing disease or illness. Said instruction merely informed the jury that if the disease or illness of the insured did pre-exist the effective date of the insurance contract and that said insurance company knew, or in the exercise of reasonable care should have known, before issuing said insurance policy and accepting payment of the premiums, *the jury would have a right to find thereby that said insurance company had waived any right to cancel said policy of insurance by reason thereof.* It is our opinion that the trial

court did not err in giving this instruction and that said instruction did not permit the insured to recover for pre-existing disease or illness. It merely informed the jury that the insurance company could not cancel the policy. See, *Kentucky Cent. L. & A. Ins. Co.* v. *White* (1939), 106 Ind. App. 530, 534, 19 N. E. (2d) 872.

Appellants next contend that the trial court erred in refusing to give appellant's instruction number 9. From an examination of the instructions that were given to the jury it is quite apparent that this instruction deals substantially with the same subject matter as contained in proffered instruction number 10—the only difference being that instruction number 9 is mandatory in nature. It is a well settled rule in Indiana that the trial court may properly refuse requested instructions on any or all phases of the case, although the requested instructions announced correct rules of law, where the propositions therein stated, as far as applicable to the facts of the case, are covered adequately, sufficiently or fully, or where the substance of the instruction is included in the instructions given, or the instructions actually given fully and fairly present the case to the jury. Thus it is proper for the court to refuse an instruction which merely varies the language of a given instruction. There is no necessity for repetition and duplication of instructions or for restatement of the same proposition in other language. See, *I. L. E., Vol. 28, Trial, Section 247,* and cases cited thereunder. It is therefore our opinion that the trial court committed no reversible error in refusing to give appellant's tendered instruction number 9.

Under the second main area of argument, the appellant has assigned as error the following separate and distinct causes, as found in its motion for a new trial, the same being causes 1, 2, 5, 6, 7 and 10. Cause number 5 attempts to cover plaintiff's instructions 1, 2, 6, 8, 11, 14 and 15, and also includes defendant's instructions 9, 11, 13, 15, 17, 18, 19 and 20.

Specifically under this head, the appellant maintains that the trial court committed error as follows:

1. that the measure of damages was based upon life expectancy, as shown by a mortality table; and
2. that a lump sum judgment was improper.

The record does not reveal that any mortality table was ever admitted into evidence—one was offered for introduction by the appellee but the court refused to admit it. The appellee contends that even if there had been such evidence, it would have been harmless error because the mortality table pleaded in appellee's complaint and which was offered for introduction, disclosed that the life expectancy of a man fifty-eight years of age was 18.90 years, whereas it is apparent that the jury's verdict was based upon a life expectancy of only 11 years and the appellee was awarded damages for less than half the amount prayed for in the complaint.

Both in Indiana and Kentucky the law appears to be well settled that mortality tables are properly admitted into evidence when a person is in ill health, because such condition goes only to the weight of the evidence and not to its admissibility. See *Louisville & N. R. Co. v. Scotts, Administrator* (1920) (Ky.), 220 S. W. 1066, 1067; and *Smiser, et al.* v. *State ex rel. King* (1896), 17 Ind. App. 519, 522, 47 N. E. 229.

It is our opinion that mortality tables are admissible in evidence because they go to the weight of the evidence. Therefore, appellant's mandatory instruction number 12, stating that the jury could not consider appellee's life expectancy in awarding damages, was properly refused by the trial court.

Appellant's second and final contention under this phase of its argument is that the award of damages in a lump sum is erroneous.

This action was brought for the wrongful repudiation and rescission of the entire contract of insurance. Apparently

the appellant confuses this action with cases wherein both the insurer and the insured recognize the force, effect and validity of an existing contract of insurance, but merely question or dispute some provision or term thereof, or how such contract should be defined, interpreted or applied. However, in this case the record clearly indicates that the appellant insurance company cancelled, repudiated and rescinded the "policy as of the date of issue." The appellee considered and treated the contract of insurance as having been repudiated when he instituted this action for breach of contract.

In the case of *Illinois Bankers Life Ass'n* v. *Armstrong* (1935), 100 Ind. App. 696, 710, 192 N. E. 901, our Court spoke as follows:

"That appellee accepted said repudiation and gave notice thereof is shown by the fact that in June, 1930, more than six months after the disability occurred, and after the contract had been repudiated, he brought suit for damages by reason of said repudiation by appellant.

"In the case of *Indiana Life Endowment Company* v. *Carnithan* (1916), 62 Ind. App. 567, 569, 109 N. E. 851, the court said, 'respecting a declaration or repudiation similar to that of appellant herein, that such declaration becomes a repudiation only after the promisee elects to treat it as such; that, if he does so elect, it becomes a breach of contract and he can recover upon it as such.' "

The position of the appellant appears to be untenable when it argues that damages should be confined "to accrued monthly payments" when it admittedly cancelled the contract "as of the date of issue," and that the policy, therefore, was not in existence and no benefits ever accrued. The law of contracts is well settled that where one party wrongfully repudiates a contract, the other party may accept such repudiation and bring an action for the entire damages arising from such breach. This legal principle of contracts is followed by the courts of Kentucky and Indiana. In the case of *Indiana Life Endowment Company* v. *Reed* (1913), 54 Ind. App. 450, 103 N. E. 77, our Court held as follows:

"While the policy is made a part of the second paragraph of complaint, when all the averments are considered, including the demand for $5,000, it is apparent that the theory of the paragraph is, that appellant repudiated the contract by denying all liability to appellee. In discussing this paragraph, appellee says: 'The theory of the plaintiff is that upon repudiation by defendant, plaintiff is entitled to sue immediately for damages caused by the repudiation.' With few exceptions the courts of England and America have held that the renunciation of an executory contract, either before or after the time of performance has arrived, or the refusal to carry out the provisions of a contract in course of performance, gives a right of action to the injured party for the damages sustained by reason of such breach, or repudiation of the contract. A denial of all liability, where liability has attached, is held to give the injured party the right to treat the contract as broken or repudiated and to pursue his remedy for damages for the breach, and to recover, once and for all, in a single suit all that may ultimately be due him." (Citing cases)

The appellant has cited several cases in its brief, all of which hold that installment payments, under an existing contract of insurance, cannot be collected until due. It is a well settled principle of law that when an action is brought to interpret, apply or enforce the terms of an existing contract of insurance, which is acknowledged by both parties thereto and no repudiation is involved, only installments then due can be recovered. However, because the appellant claims there never was any contract and appellee sued for the complete breach, or the repudiation of such contract, certainly payments cannot accrue or become due under a contract which does not exist.

Appellant confesses in its brief that it failed to prove its Paragraph Two of Defense wherein it alleged that the contract of insurance was procured through fraud; therefore, if there was no fraud in connection with the issuance of the policy of insurance, it naturally follows that said insurance company had no right to cancel and repudiate the contract of insurance and the cancellation was wrongful.

It is our opinion that where there is no question about a total and complete repudiation of an insurance contract, such as is admitted in the case at bar, the aggrieved party has a right to recover in a single action all that may ultimately be due him. See, *Indiana Life Endowment Company* v. *Reed, supra; Howard* v. *Benefit Ass'n of Railway Employees* (Ky.) (1931), 39 S. W. (2d) 657.

We are of the opinion that the jury was adequately instructed on all phases of the case; and that the decision of the court below is not contrary to law and is sustained by sufficient evidence.

Judgment affirmed.

Bierly, Hunter and Mote, JJ., concur.

NOTE.—Reported in 213 N. E. 2d 900.