CINDY KAYE DRAPER, n/k/a Cindy Kaye Stokstad, Plaintiff-Appellant, v. FRONTIER INSURANCE COMPANY, Defendant-Appellee.

Second District   No. 2—93—0666

Opinion filed August 10, 1994.

David F. Black, of UAW-Chrysler Legal Services Plan, of Belvidere, for appellant.

Richard R. Haldeman and Michael J. Hedeen, both of Haldeman & Associates, of Rockford, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Cindy Kaye Draper, sought a declaration that defendant, Frontier Insurance Company, owed her benefits under a life insurance policy it issued to her late husband, James Draper. Plaintiff alleged that, while James Draper was alive, defendant wrongfully "terminated" the policy and that, as a named beneficiary, she was entitled to collect because the policy was still in force. The trial court dismissed the complaint pursuant to section 2—619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(5) (West 1992)) because the suit was filed outside the 10-year limitations period (735 ILCS 5/13—206 (West 1992)). Plaintiff appeals.

On appeal, plaintiff advances two arguments for why the court erred in dismissing her complaint. First, the limitations period did not begin until James Draper's death, as only then did plaintiff acquire the right to sue on the policy. Second, even if her cause of action accrued when James Draper acquired a cause of action for wrongful termination of the policy, the accrual date was at least arguably less than 10 years before plaintiff filed suit.

We hold that: (1) plaintiff's cause of action for wrongful cancellation accrued when her husband's identical cause of action accrued; and (2) the trial court erred in concluding on the limited evidence that the date of accrual was more than 10 years before plaintiff filed her complaint. We reverse the order of dismissal and remand the cause for further proceedings.

On January 20, 1993, plaintiff filed a complaint alleging the following facts. James Draper's policy provided for the waiver of premiums if the insured provided proof that he had become totally disabled. On April 1, 1981, James Draper became totally disabled. He submitted proof of the disability, but, on or about January 26, 1983, defendant wrongfully allowed the policy to lapse. James Draper died November 1, 1989. Because defendant's "cancellation" of the policy was improper, the policy was still in force, and plaintiff was entitled to recover thereunder.

A copy of the policy is attached to the complaint. The policy provides that all premiums are due and payable in advance and that "[e]xcept as otherwise provided herein, the policy shall automatically become void if any premium is not paid when due." There is a grace period of 31 days for the payment of every premium after the first; during this grace period, the policy remains in effect. The policy also specifies that, after the nonpayment of any premium, the policy will be reinstated upon written application if premiums due through the time of reinstatement are paid and satisfactory evidence of insurability is furnished.

Defendant moved to dismiss the complaint, arguing that plaintiff's cause of action accrued on August 28, 1982, when the policy by its terms automatically lapsed because James Draper failed to pay the premium then due. Defendant attached the affidavit of Alberta Dollens, who had reviewed Draper's claim of total disability. Dollens' affidavit states that, by letter of December 16, 1982, she denied Draper's request for a premium waiver. By a letter of January 26, 1983, defendant informed Draper that, because the premium that was due on August 28, 1982, had not been received, the policy had lapsed with no value. Defendant had received no premium payments since August 28, 1982, and no further correspondence about the policy until December 1990, when plaintiff inquired about the policy and defendant responded that no benefits were payable because the policy had lapsed on August 28, 1982.

Attached to Dollens' affidavit is a copy of her letter, dated December 16, 1982, informing James Draper of defendant's belief that it was "unable to waive your premium at this time" because the form Draper submitted did not disclose that he was totally disabled. Also attached is a copy of defendant's January 26, 1983, letter informing James Draper that "[s]ince your annual premium *** due August 28, 1992, has not been received, we have lapsed your policy." The letter states that, upon the payment of the overdue premium and the completion and approval of enclosed reinstatement forms, defendant would reinstate the policy.

After the trial court granted defendant's motion, plaintiff timely appealed. Before we address plaintiff's arguments in detail, we set out guidelines for our review of the judgment.

Section 2—619 provides a means to dispose of issues of law or of easily proved issues of fact. (*Meyers v. Rockford Systems, Inc.* (1993), 254 Ill. App. 3d 56, 61; *Melko v. Dionisio* (1991), 219 Ill. App. 3d 1048, 1057.) A section 2—619 motion admits all well-pleaded facts in the complaint but does not admit conclusions of law or conclusions of fact unsupported by specific allegations. (*Melko*, 219 Ill. App. 3d at 1057.) The trial court should grant the motion only if, after construing the documents supporting the motion in the light most favorable to the nonmovant, it finds no disputed issues of fact. (*Meyers*, 254 Ill. App. 3d at 61.) The trial court may not weigh the evidence or decide controverted material issues of fact. *Melko*, 219 Ill. App. 3d at 1057-58.

The parties agree that the applicable limitations period is the 10 years allowed for actions on written contracts. (735 ILCS 5/13—206 (West 1992).) They disagree on when this period started to run. We hold that plaintiff was required to file her complaint within 10 years of the accrual of the cause of action for wrongful cancellation. We reject plaintiff's argument that the limitations period started only upon the death of James Draper.

Plaintiff maintains that, because she is seeking to recover as the beneficiary of a life insurance policy, she had no cause of action until the death of James Draper. She reasons that, until the death of the insured, she had no vested interest in the policy and thus could not have successfully pursued her claim for benefits under the policy. Plaintiff relies in part on a Federal case which applied Pennsylvania law to a similar set of facts and held that, because the insured had the absolute right to change beneficiaries during his lifetime, his surviving spouse acquired a vested right against the insurance company only upon the death of the insured. (*Kucera v. Metropolitan Life Insurance Co.* (3d Cir. 1983), 719 F.2d 679, 680.) The majority in *Kucera* acknowledged that the success of the plaintiff's claim depended on her allegation that the company wrongfully terminated the policy while the insured was alive, more than six years (the applicable limitations period) before the plaintiff filed her suit. However, the *Kucera* majority reasoned that the plaintiff's cause of action accrued only when she had the legal right to sue. Thus, because she could not recover until the death of the insured, the statute of limitations started to run only upon that event and not upon the defendant's allegedly wrongful act against the insured. *Kucera,* 719 F.2d at 681.

The dissenting judge in *Kucera* maintained that, because the plaintiff's action was premised on her allegation that the defendant wrongfully terminated the insurance policy on which she based her claim, a cause of action for wrongful termination accrued more than six years before the plaintiff filed suit, thus barring the attempted recovery on the policy.

The dissenting judge believed that the crucial consideration was that the statute of limitations ran against the cause of action itself and not against the particular party seeking to enforce it. (*Kucera*, 719 F.2d at 681-82 (Rosenn, J., dissenting).) The dissent relied on the statement of the Illinois Supreme Court that "[t]he statute runs against the right of action, not the holder thereof." (*O'Connell v. Chicago Park District* (1941), 376 Ill. 550, 557.) Thus, the cause of action for wrongful termination accrued when the insured obtained the right to sue on this theory, and it did not start again upon his death. Also, to allow the beneficiary to sue for wrongful cancellation after the limitations period would have run against the insured on the same cause of action would violate the established rule that the third-party beneficiary of an insurance contract can acquire no better right to enforce the contract than the insured himself possessed. *Kucera*, 719 F.2d at 683 (Rosenn, J., dissenting).

●1 We agree with the trial court that, whatever result may have been proper under Pennsylvania law, it is the *Kucera* dissent and not the majority which follows Illinois law. *O'Connell*'s rule that the limitations period runs against the cause of action itself is still good law in this State and we must follow it. Moreover, under Illinois law, a third-party beneficiary to a contract has no greater rights than the party under which she claims. *In re Estate of Fallscher* (1987), 159 Ill. App. 3d 302, 306.

Here, plaintiff's suit is not merely one to recover on the policy, but also one for the wrongful cancellation of the policy. The former claim is wholly and necessarily dependent on the latter. Furthermore, plaintiff's complaint itself explicitly seeks a declaration that defendant wrongfully cancelled the policy during the life of the insured. Were James Draper still alive, the time in which he could have brought suit for wrongful cancellation would have run no later than early in 1993. Following the *Kucera* majority would require us to hold that Draper's death in 1989 extended the limitations period on his cause of action for wrongful cancellation to November 1, 1999. This holding would be inconsistent with the law we have set out; it would add an indefinite number of years to the limitations period applicable to a cause of action for the wrongful cancellation of a life insurance policy.

Having determined that plaintiff's cause of action accrued when Draper's similar cause of action accrued, we must now determine whether the trial court erred in finding that the date of accrual was more than 10 years before plaintiff filed her complaint. When the limitations period commences is usually a question of fact unless only one conclusion may be drawn from the undisputed facts. (*Melko*, 219 Ill. App. 3d at 1058.) The general rule is that a cause of action accrues when all the elements are present so that a party has the right to invoke the aid of a court to enforce his remedy. (*Rohter v. Passarella* (1993), 246 Ill. App. 3d 860, 869.) We agree with plaintiff that there is at least a factual issue whether all the elements of a claim for wrongful cancellation of the policy were present before January 20, 1983.

●2 We hold initially that the cause of action for wrongful cancellation accrued when defendant notified Draper that it was terminating the policy. The elements of a cause of action for wrongful termination of the policy could not have been present in full until defendant actually purported to terminate the policy. Draper could not have maintained the action until he was on notice of the termination. There is no suggestion that defendant needed to satisfy any statutory or contractual provisions to make its notice of cancellation effective. Thus, the cause of action accrued upon defendant's notifying Draper that the policy was terminated. Our conclusion follows from the general principles we have noted and from the admittedly scant case law addressing this specific situation. See *Kucera*, 719 F.2d at 682 (Rosenn, J., dissenting) (cause of action accrued upon the wrongful termination); *Harless v. Western & Southern Life Insurance Co.* (W. Va. 1937), 192 S.E. 137, 140 (limitations period begins when plaintiff acts in rejecting or accepting insurer's renunciation, making insurer's anticipatory renunciation of the contract an actionable breach).

At the trial level, defendant argued in part that the cause of action accrued on August 28, 1982, when the policy by its own terms automatically lapsed because plaintiff failed to pay the premium due. However, this argument improperly assumes that the automatic-lapsing provision ever went into effect. As defendant conceded at the trial level, its motion to dismiss admitted the truth of plaintiff's allegation that the policy was *wrongfully* terminated because defendant did not waive the premiums after Draper submitted the proof of his total disability. Assuming (as defendant acknowledges we must) that the denial of Draper's claim was wrongful, we must conclude, for purposes of the motion to dismiss, that Draper was not obligated to pay any premiums after he became totally disabled, which was before the premium due date. Thus the automatic lapsing provision never

took effect, as Draper was not obligated to pay the August 28, 1982, premium (or, as far as we can say on this record, any later premium).

Defendant argues before this court that the cause of action accrued on or about December 16, 1982, when defendant notified Draper that it would not waive the premiums. Defendant reasons that, assuming, as we must, this refusal was wrongful, it follows that, by December 16, 1982, plaintiff was on notice of facts that sufficed to constitute the elements of a cause of breach of the insurance contract. Thus, defendant asserts, the statute of limitations for the present action started to run in December 1982.

We do not find this argument persuasive. Plaintiff's suit is not simply one for breach of contract but for the wrongful cancellation of the policy. Whether the letter of December 16, 1982, can be construed as an act terminating the policy is at best a debatable factual issue which cannot sustain the grant of a section 2—619 motion. Not until January 26, 1983, did defendant inform Draper that it was cancelling the policy. Only at that later time did defendant notify Draper that the policy had indeed lapsed or that he would need to file the forms necessary to reinstate the policy.

We believe that the wrongful cancellation of an insurance policy is a species of, or at least analogous to, the anticipatory repudiation of the contract. (See *Harless*, 192 S.E. at 139-40 (insurer's statement to insured that policy has lapsed becomes actionable as breach of contract when insured acts so as to accept or reject the renunciation).) Under Illinois law, anticipatory repudiation is actionable as a breach of contract when—and only when—the repudiating party unequivocally and without justification renounces its duty to perform the contract on its date of performance. (*In re Marriage of Olsen* (1988), 124 Ill. 2d 19, 24; *Lake Shore & Michigan Southern Ry. Co. v. Richards* (1894), 152 Ill. 59, 89-90; *Wilmette Partners v. Hamel* (1992), 230 Ill. App. 3d 248, 260.) There is no anticipatory repudiation if a party does no more than make doubtful or indefinite statements that it will not perform or that it will perform only within its interpretation of the contract. *Marriage of Olsen*, 124 Ill. 2d at 24-25.

The application of the anticipatory repudiation doctrine reinforces our conclusion that defendant did not cancel the policy until its letter of January 26, 1983. Defendant's letter of December 16, 1982, was not a clear statement that it was renouncing its obligation to insure Draper. The letter conveyed only defendant's belief that the premium waiver did not operate under the circumstances at the time. Moreover, the letter was somewhat equivocal; it stated only that, given the present state of its information, defendant could not waive the premium "at this time."

Only on January 26, 1983, less than 10 years before plaintiff filed her complaint, did defendant inform Draper that it had lapsed the policy. From the available evidence, we conclude that it was at this time that Draper's cause of action for wrongful cancellation (or "lapsing" or "termination") of the policy accrued. At the very least, the trial court's determination otherwise cannot be sustained under the standards of section 2—619. Therefore, the complaint was timely and the trial court erred in dismissing it.

The order of dismissal is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

INGLIS, P.J., and GEIGER, J., concur.