FIRST DIVISION

June 30, 2003

1-02-1306

JORG BUSSE, M.D. a/k/a ) Appeal from the

JOERG BUSSE, M.D. a/k/a ) Circuit Court of 

JOREG R. BUSSE, M.D., ) Cook County

)

Plaintiff-Appellant, )

)

)

)

THE PAUL REVERE LIFE INSURANCE CO., ) No. 98 L 11983

an insurance company organized in Massachusetts )

and licensed in Illinois, PROVIDENT LIFE AND )

ACCIDENT INSURANCE CO., an insurance )

company organized in Pennsylvania and licensed )

in Illinois and PROVIDENT COMPANIES, INC., )

a foreign corporation, ) Honorable 

) Allen S. Goldberg,

Defendants-Appellees. ) Judge Presiding.

JUSTICE SMITH delivered the opinion of the court:

This is a breach of contract case, arising out of the non-payment of benefits to plaintiff,

Dr. Busse, under two disability income insurance policies.  Trial has not yet taken place below, and the case is before this court pursuant to an appeal under Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)).  The question certified for this court's review is:

Does I.P.I. 700.00 authorize recovery of future damages based upon

a repudiation theory where a plaintiff alleges a breach of contract and

a section 155 claim in the context of a disability insurance policy calling

for periodic payment of benefits based upon certain conditions precedent, 

including continued disability?

   
FACTUAL BACKGROUND
 
(footnote: 1)
 Dr. Busse is an anesthesiologist who, in 1989, purchased from Provident Mutual Life Insurance Company (Provident) an "own occupation" disability income insurance policy, and in 1994 purchased similar insurance from Paul Revere Life Insurance Company (Paul Revere).  Under the terms of both policies, Dr. Busse was to receive benefits on a monthly (periodic) basis, in the event that he became unable to practice anesthesiology due to mental or physical illness.  The Provident policy was to pay Dr. Busse until he reached the age of 65; the Paul Revere policy was to pay Dr. Busse for life.  Benefits under both policies were made subject to the submission by Dr. Busse of written proofs of loss within 90 days after the end of each monthly period of the time for which he was claiming benefits.  Neither policy provides for benefits related to "permanent" disability, nor does either include provisions for or circumstances under which disability benefits could become accelerated or payable on a lump sum basis. 

In May of 1995, Dr. Busse paralyzed a patient while administering a spinal anesthetic.
(footnote: 2)  After injuring his patient, Dr. Busse began to suffer from major depression and other mental illness, including uncontrollable anxiety.  He also experienced involuntary tremors.  He was obliged to give up his staff privileges at Illinois Masonic Medical Center.   Dr. Busse began treatment with Dr. Cahnmann, Ph.D., a licensed professional clinical counselor and Dr. Kurland, M.D., a psychiatrist, both of whom have repeatedly and continuously certified that he is completely disabled and unable to practice anesthesiology.  They are both of the opinion that this condition is permanent.  Dr. Busse has been and continues to be on a daily regimen of prescribed medications, some of which are psychotropic, including Wellbutrin, Serazone, Propanolol, Neurotin and Risperdol. 

In the fall of 1995, Dr. Busse made a claim on both of his policies, pursuant to which both Provident and Paul Revere began to pay him monthly income benefits.  Payment of these benefits continued for approximately three years.  In 1998, evidently pursuant to an investigation into Dr. Busse's disability status, the companies received a copy of a document filed in the course of Dr. Busse's divorce proceedings in the Circuit Court of Cook County.  The document, entitled "Answer to Motion For Psychiatric Evaluation," contains the following statement:

"The Respondent (Busse) did claim that he was out of work due

to disability and due to his immigration status which bars him from

working legally in this country.  The Respondent is now waiving his 

claim to be out of work due to disability, and therefore denies the

allegation contained in paragraph 2 of said Motion."

Following their receipt of the document, the companies asked Dr. Busse to undergo independent medical examinations.  Dr. Busse was first examined by a psychologist, who was unable to obtain a valid diagnosis due to the psychotropic drugs Dr. Busse was taking.  Dr. Busse was then referred to a psychiatrist qualified to evaluate a medicated subject.  This psychiatrist found Dr. Busse to be completely disabled and unable to practice anesthesiology.

An internal memorandum from Provident's claim department dated May 5, 1998 indicates that Dr. Busse's "IME's appear to support [total disability] at this time."  Nevertheless, during the month of June, correspondence was being exchanged between Dr. Busse and the companies in which the companies stated that Dr. Busse's "waiver" of his disability claim in the context of his divorce proceeding was "inconsistent" with the policy's definition of disability due to mental or physical illness, and that benefits would accordingly be discontinued.
(footnote: 3)  There was additionally some evidence that Dr. Busse was working, though not in the field of anesthesiology or even medicine.  

Prior to filing suit, Dr. Busse filed a complaint with the Illinois Department of Insurance.  The Department opened an inquiry, pursuant to which the companies were directed to and did file with the Department a statement of the basis for denial of benefits in this case, along with any supporting records from their claims files.  In a letter to the companies dated October 28, 1998, the Department set forth its conclusion that there was no basis for the companies' continued denial of Dr. Busse's claims, and further stated that the correspondence it had received from the companies did not adequately explain their denial.    

According to Dr. Busse, the companies subsequently wrote to him and cancelled his policies.  The record shows that on January 6, 1999, Provident cancelled Dr. Busse's policy, for non-payment of premiums (benefits were never reinstated after the initial denial in mid 1998).  Both companies deny that their policies were ever cancelled or otherwise rescinded.

Dr. Busse filed his initial two-count complaint on October 16, 1998.  Count I alleged breach of contract against both companies.
(footnote: 4)  Count II alleged that the companies' failure and refusal to pay under the contracts of insurance was vexatious, unreasonable, and done in bad faith, warranting damages pursuant to §155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2001)).  

Dr. Busse planned to claim entitlement to the present cash value of the entire policies.  Towards this end, hired an economist (disclosed as a 213(g) witness) to assist the trier of fact in making this calculation.  The calculation was based on Dr. Busse's work and life expectancies, and made the assumption that Dr. Busse was, as reported by all who had examined him, permanently disabled from working as an anesthesiologist.  The economist calculated the present cash value of the two policies, over the course of Dr. Busse's expected life, to be just over $6,000,000.00.  

Trial was scheduled to begin on April 22, 2002.  The companies filed a motion 
in limine
 (entitled Motion 
in Limine
 No. 3) to bar the economist's testimony, and to preclude the introduction of any evidence as to Dr. Busse's future damages, on the ground Illinois recognizes no cause of action which would allow them for the breach of a policy calling for periodic payments that are subject to conditions precedent.  At most, the companies contended before the trial court, Dr. Busse would be entitled to the benefits which had accrued up to the date of trial.   In his response to the motion, Dr. Busse argued that, under a theory of anticipatory repudiation, he would be entitled to a lump sum payment of the policy values, and thus, the jury should hear evidence of what those values are.

After hearing argument on April 10, 2002, the trial court issued a written ruling in which it granted the motion to bar evidence of future damages.  The court acknowledged that Illinois has not decided the issue, but that most states permit recovery for the breach of a disability policy only in the amount of installments accrued and unpaid as of the date of trial.

Dr. Busse requested leave to have the question of the availability of future damages certified pursuant to Rule 308(a).  The trial court acquiesced, and this court subsequently accepted the appeal.

             
ANALYSIS

On appeal, Dr. Busse contends that the drafters of the Illinois Pattern Jury Instructions contemplated that future contract damages are recoverable, and that they are warranted in this case because the companies have anticipatorily repudiated their contractual duty to pay him disability benefits despite proof that he is and will continue to be disabled.

Repudiation of a contract "usually ... consists of a statement that the repudiating party cannot or will not perform."  FARNSWORTH ON CONTRACTS, § 8.21, at 535.  "A repudiation may be by words or other conduct."  
Id
.  And, although a party may state that it intends to honor its obligations, it may still repudiate the contract by insisting that it is obligated to perform only according to its own incorrect interpretation of the contract's terms.  
Id
. at 536-37; see also 
In re Marriage of Olsen
, 124 Ill. 2d 19, 24, 528 N.E.2d 684 (1988).  Moreover, the refusal to perform may itself be a repudiation, in spite of a party's words seeking to reassure the other party of its intent to perform in the future.  FARNSWORTH, § 8.21, at 539-40. 

In Illinois, "anticipatory repudiation is actionable as a breach of contract when -- and only when -- the repudiating party unequivocally and without justification renounces its duty to perform the contract on its date of performance."  
Draper v. Frontier Ins. Co.
, 265 Ill. App. 3d 739, 745, 638 N.E.2d 1176 (1994).  See also 
Podolsky & Associates, L.P. v. Discipio
, 297 Ill. App. 3d 1014, 1023, 697 N.E.2d 840 (1998); 
Wilmette Partners v. Hamel
, 230 Ill. Ap. 3d 248, 260, 594 N.E.2d 1177 (1992); 
Yale Development Co. v. Aurora Pizza Hut, Inc.
, 95 Ill. App. 3d 523, 526, 420 N.E.2d 823 (1981).  There is no anticipatory repudiation if a party does no more than make doubtful or indefinite statements that it will not perform.  
Olsen
, 124 Ill. 2d at 24.  The proper measure of the damages available to a party who establishes repudiation is the amount of money that will place the injured party in as satisfactory a position as he or she would have been in had the contract been performed.  
Equity Insurance Managers of Illinois, LLC v. McNichols
, 324 Ill. App. 3d 830, 837, 755 N.E.2d 75 (2001).   

Illinois courts have not yet addressed the issue of whether a claim for the anticipatory repudiation of a disability insurance policy, if proven, will form the basis for the recovery of future damages in a lump sum equal to the face value of the policy.  

We begin by looking to IPI 700.14, which provides for future damages following a breach of contract.  That instruction provides:

700.14 Contracts -- Breach of Contract -- Future Loss

Damages for breach of contract may include loss that is reasonably 

certain to occur in the future.  Such damages must be reduced to 

present cash value.

The comment underneath 700.14 refers the reader to the introduction to the 700.00 chapter.  There, it is stated that the measure of general damages should be equal to the "benefit of the bargain."  See 
Equity Insurance Mangers of Illinois, LLC v. McNichols
, 324 Ill. App. 3d 830, 837, 755 N.E.2d 75 (2001).  The majority of jurisdictions to have interpreted what the "benefit of the bargain" means in the context of the breach of a disability policy have concluded that it is equal to the amount of money owing up to the time the breach is established, 
 i.e.
, the date of trial.  See, 
e.g.
, 
Rosenfeld v. City Paper Co.
, 527 So.2d 704 (Ala. 1988); 
Franklin Society Federal Savings & Loan Ass'n v. Far-Pap Corp.
, 57 A.D.2d 607 (N.Y. 1977);  
Greguhn v. Mutual of Omaha Ins. Co.
, 23 Utah 2d 214 (1969);  
John Hancock Mutual Life Ins. Co. v. Cohen
, 254 F.2d 417 (9th Cir. 1958); 
Mack v. Revicki
, 47 N.J.Super. 185 (1957); 
Phelps v. Herro
, 215 Md. 223 (Md. 1957); 
Maybery v. Western Casualty & Surety Co.
, 173 Kan. 586 (1952); 
Jordon v. Nickell
, 253 S.W.2d 237 (Ky.App.1952).

Dr. Busse maintains that an award, at the conclusion of litigation, of money damages equal to what the insurer should have paid in the first place, may not actually achieve the goal of contract damages, which is to place the plaintiff in the position he would have been in had the contract been performed as promised.  See Calamari and Perillo, Contracts § 14.4 [4th ed. 1998].  Among other things, this concept of damages presumes that a plaintiff has access to an alternative source of funds from which to pay that which the insurer refused to pay.  

Dr. Busse directs our attention to decisions from jurisdictions in which it has been held that an insured's recovery should not be limited to what is past due, and, in the event of an anticipatory breach, should extend to the amount that is ultimately due to him under the policy (
i.e.
, a lump sum payment).  In this way, Dr. Busse urges, an aggrieved insured would avoid the necessity of returning to court in the future should the insurance company again determine to discontinue benefits.

In 
Prudence Life Insurance Co. v. Morgan
, 138 Ind. App. 287 (1966), the plaintiff was insured under a life insurance policy that provided for monthly benefits in the event that the insured became disabled.  On March 5, 1962, the insured was moving hay in his barn when he suffered, for the first time, an attack of weakness and inability to breathe, as a result of which he was hospitalized and then confined to bed.  He was treated and examined regularly by a qualified physician, who diagnosed him with, among other ailments, emphysema.  The defendant initially paid out benefits, but by July 6, 1962, stopped payment and notified the plaintiff that the policy of insurance was cancelled, and that no further proofs of loss would be accepted or benefits paid, because the condition was pre-existing.

The insured filed suit, alleging the wrongful revocation and repudiation of the insurance contract, and seeking the face value of the policy, based on a calculation of his life expectancy, in a lump sum award.  The plaintiff prevailed at trial, and on appeal, the court affirmed.  The appellate court stated that:

"With few exceptions the courts of England and American have held

that the renunciation of an executory contract, either before or after

the time of performance has arrived, or the refusal to carry out the

provisions of a contract in the course of performance, gives a right

of action to the injured party for the damages sustained by reason of

such breach or repudiation of the contract.  A denial of all liability,

where liability has attached, is held to give the injured party the right

to treat the contract as broken or repudiated and to pursue his remedy

for damages of the breach and to recover, once for all, in a single suit

all that may ultimately be due him."  

Morgan
, 138 Ind.App. at 305.  The court in 
Morgan
 went on to discuss the fact that the defendant should not be allowed to seek the protection of the contract language calling for payments only in installments and only when due, because its repudiation was tantamount to a claim that no contract existed.

Similarly, in Texas, it is the law that:

"[W]here a party *** obligated by contract to make monthly payments

of money to another absolutely repudiates the obligation without just

excuse, the obligee is entitled to maintain his action in damages at

once for the entire breach, and is entitled in one suit to receive in damages

the present value of all that he would have received if the contract had 

been performed."

Group Life and Health Ins. Co. v. Turner
, 620 S.W.2d 670, 673 (1981), citing 
Universal Life & 

Accident Ins. Co.
, 129 Tex. 344 (1937).  The same is true in Arkansas.  In 
Metropolitan Life Ins. Co. v. Harper
, 189 Ark. 170 (1934), the court held that where in insurer repudiates its contractual obligation, as by denying the existence or validity of the contract, an insured's entitlement to disability payments is not limited to recovery of installments which have accrued up to the time of suit, but he may also recover the present value of future benefits.

The companies maintain that Dr. Busse's attempt to state a claim under the theory of anticipatory repudiation is precluded by § 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1998)).  Section 155 provides:  

§155.  Attorney fees.
  

(1) In any action by you or against a company wherein there is in issue the

 liability of a company on a policy or policies of insurance or the amount of  

the loss payable thereunder, or for an unreasonable delay in settling a claim, 

and it appears to the court that such action or delay is vexatious and unreasonable, 

the court may allow as part of the taxable costs in the action reasonable attorneys 

fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to 

recover against the company, exclusive of all costs;

(b) $25,000;

(c) the excess of the amount which the court or jury finds such party is entitled to

recover, exclusive of costs, over the amount, if any, which the company offered to pay in 

settlement of the claim prior to the action.

(2) Where there are several policies insuring the same insured against the same loss

whether issued by the same or by different companies, the court may fix the amount of the

allowance so that the total attorney fees on account of one loss shall not be increased by

reason of the fact that the insured brings separate suits on such policies.

215 ILCS 5/155 (West 1998).  

Section 155 provides an extra-contractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim is vexatious and unreasonable.  
Cramer v. Insurance Exch. Agency
, 174 Ill. 2d 513, 526, 675 N.E.2d 897 (1996).  As the court in Cramer recognized,

"[a]n insurer's conduct may give rise to both a breach of contract

action and a separate and independent tort action.  Mere allegations of

bad faith or unreasonable and vexatious conduct, without more, however,

do not constitute such a tort.  Courts therefore should look beyond the

legal theory asserted to the conduct forming the basis for the claim.

In cases where a plaintiff actually alleges and proves the elements of a 

separate tort, a plaintiff may bring an independent tort action, such as

common law fraud, for insurer misconduct."

Cramer
, 174 Ill. 2d at 527 (citations omitted).  

We agree with the companies that Dr. Busse's claim for anticipatory breach is in effect one for bad faith denial of benefits, and is therefore preempted by § 155, which the legislature has determined to be the remedy for such conduct.  Looking beyond the legal theory Dr. Busse purports to advance, it is clear that he in effect is seeking damages for the companies' unreasonable and vexatious denial of benefits.  Dr. Busse does not attempt to state a claim for a separate tort, but instead seeks to avoid the monetary limitations of recovery under § 155 by bringing a claim under a contractual theory.  We are not persuaded that this semantic manipulation amounts to a basis for recovery that is separate from bad faith. 

 The court in 
Cramer
 cautioned against litigant attempts to make an "end run" around the limits imposed by § 155 by creating a common law action" that remedies the same basic evil."  174 Ill. 2d at 520.  See also 
Combs v. Insurance Co. of Ill.
, 146 Ill. App. 3d 957, 497 N.E.2d 503 (1986) (holding that a claim for bad faith denial of benefits framed as claim for intentional infliction of emotional distress was preempted by § 155).  Because we find that Dr. Busse's claim falls within the purview of § 155, we hold that the trial court properly held that future damages based upon a theory of anticipatory repudiation are not recoverable. 

We therefore answer the certified question in the negative.

We hasten to add that our conclusion does not leave Dr. Busse without a means of redress.  Upon the trial of this case, should the jury determine that Dr. Busse is in fact permanently disabled, that issue will then be 
res
 
judicata
.  There is no reason why that jury verdict should not be given effect into the future, and we are confident that noncompliance on the part of the companies with the terms of such a judgment would be met with an appropriate equitable remedy.

CONCLUSION

In sum, the I.P.I 700.00 series provides that the general measure of damages for a breach of contract is the amount that the parties would have realized had the contract been performed according to expectations.  In this case, assuming the jury determines that Dr. Busse's claims for disability benefits were wrongfully denied, damages would be equal to the amount of benefits that have accrued up to the date of trial.  Dr. Busse may also be entitled to damages under § 155, should the jury determine that the companies' refusal to pay benefits under the policies was accompanied by bad faith.  He is not entitled to recover future damages under a theory of anticipatory repudiation.

Having answered the question certified for review, we now remand this matter to the trial court for further proceedings consistent with this opinion.

Cause Remanded.

MCNULTY and O'MALLEY, JJ., concur.

FOOTNOTES
1: 
In their briefs, the parties spend a lot of time trying to establish that there either was or was not a repudiation of the policies at issue.  For the most part, this is irrelevant, since this court is now called upon not to determine whether a repudiation took place, but whether, if one were established, Dr. Busse would be entitled to an award of future benefits.  Similarly, the companies' insistence that the pleadings, in their present form, cannot support a theory of anticipatory repudiation is of no consequence.  Dr. Busse can amend his pleadings under 2-616, and in fact has apparently done so, though the amended pleading is not part of the record now before this court.

2: 
The incident resulted in a lawsuit (still pending).

3: 
Beyond referring Dr. Busse to the definition of disability, the companies did not rely on any specific policy provisions to support that assertion.

4: 
In paragraph 11 of Count I of that complaint, Dr. Busse alleged that Provident and Paul Revere are either owned by or are divisions of Provident Companies, Inc., and thus they are sued as one entity.